In the Matter of the Application of NORTHERN STATES POWER COMPANY for Authority to Increase Its Rates of Electric Service in Minnesota.

No. C1-88-2406.

Court of Appeals of Minnesota.

May 23, 1989.

Hubert H. Humphrey, III, Atty. Gen., Mary Jo Murray, Spec. Asst. Atty. Gen., St. Paul, for relator Minnesota Dept. of Public Service.

Michael J. Bradley Spec. Asst. Atty. Gen., St. Paul, for intervenor-relator Atty. Gen. Hubert H. Humphrey, III.

Jon Erik Kingstad, Gregory D. Dittrich, Spec. Asst. Attys. Gen., St. Paul, for Respondent Minnesota Public Utilities Com'n.

Heard, considered and decided by
FOLEY, P.J., and NIERENGARTEN
and LESLIE,* JJ.

## OPINION

FOLEY, Judge.

We are called upon to review an order by respondent Minnesota Public Utilities Commission which denied reconsideration of a decision in a general rate case filed by Northern States Power Company. The Commission refused to reopen the rate case to allow testimony on a cost study from a prior proceeding upon which the Commission had relied but which was never made a part of the record in the rate case. We reverse and remand.

## FACTS

Northern States Power Company is an electric utility subject to regulation by the Minnesota Public Utilities Commission. NSP owns three nuclear generating facilities which will require decommissioning within the next quarter century. In 1981, the Commission issued an order requiring NSP to treat its decommissioning costs as depreciation costs and develop plans for recovering those costs.

In 1986 in Docket E–002/D–86–604 (hereinafter Docket 604), the Commission conducted a five-year review of NSP's decommissioning plans. NSP filed a decommissioning cost study in Docket 604, and based upon that study, the Commission determined that NSP's estimated decommissioning would be approximately $489 million.

Relator Minnesota Department of Public Service and Intervenor–Relator Attorney General Hubert H. Humphrey, III filed petitions for reconsideration of the Docket 604 order, challenging the Commission's findings on decommissioning costs. On December 7, 1987, the Commission denied the petitions for reconsideration, concluding that the parties had been afforded the opportunity to present evidence supporting or refuting the NSP study, but had not availed themselves of such opportunity. The Commission indicated that there was no reason to order a contested case hearing and noted that

the parties have the opportunity either by petition or in NSP's current general rate case * * * to raise issues on decommissioning costs as their investigations develop.

NSP's general rate case, which is the subject of the present appeal, was filed in November 1987. The rates that NSP proposed to charge necessarily included amounts to be collected and set aside to pay the costs of decommissioning the three nuclear facilities. The Commission accepted NSP's general rate case filing and ordered a contested case hearing to be conducted on NSP's proposed rate increase.

The Administrative Law Judge (ALJ) assigned to the case granted petitions to intervene by the Department of Public Service and the Attorney General. Thereafter, the parties stipulated to most of the financial issues. Specifically, the parties stipulated that a study performed by MHB Technical Associates, Inc. accurately predicted the costs of decommissioning NSP's nuclear facilities. The MHB study results indicated that the NSP study used in Docket 604 had overestimated decommissioning costs by approximately $109 million.

The ALJ conducted a contested case hearing, and the parties submitted testimony on the financial issues involved, including evidence regarding the stipulated costs of decommissioning NSP's three nuclear plants. Following the hearing, the parties filed an explanation of their stipulation with the ALJ.

On June 23, 1988, the ALJ issued his findings and recommendations, determining that the stipulation was supported by the evidence and recommending that the Commission adopt the stipulated decommissioning costs.

By order dated August 23, 1988, the Commission adopted portions of the parties' stipulation but rejected the portion of the stipulation relating to nuclear decommissioning costs. The Commission explained that the costs determined by the MHB study represented a significant change from the costs in NSP's study, and

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. 6, § 2.

the Commission did not believe the evidence had been developed fully enough to justify changing its earlier decision in Docket 604. The Commission noted that if NSP's consultant had been offered an opportunity during the contested case proceedings, he might have presented a "compelling defense" of his cost study. The Commission concluded:

Finally, a comparison of the two studies on the basis

of the information available discloses no reason to favor the DPS study over [NSP's]. [NSP's] study was careful, detailed, and site-specific. The Commission examined it in a proceeding initiated solely for that purpose and accepted it after full consideration in [Docket 604]. The Commission will not reject it now, in the context of a proceeding in which it was one negotiable issue among many.

The Department of Public Service and Attorney General filed petitions for reconsideration of the Commission's order, arguing that since the NSP study was not made a part of the record in the contested case proceeding, the Commission should reopen the record and allow the parties to cross-examine the author of that study.

The Commission denied reconsideration of the decommissioning issue, and the Department of Public Service and Attorney General have obtained a writ of certiorari to review the Commissioner's decision.

## ISSUES

1. Did the Commission err by refusing to adopt the stipulated decommissioning costs?

2. Did the Commission err by relying upon a study from a prior proceeding which was never introduced into the record?

## ANALYSIS

■ 1. Parties to a proceeding before the Commission may stipulate to the facts or a portion of the facts, and "such stipulation shall be regarded and used as *evidence* in the determination thereof." Minn.R. 7830.3500 (1987) (emphasis added.) This language indicates that the Commission in the present case was bound only to consider, not accept, the parties' stipulation regarding decommissioning costs.

■ 2. While the Commission was not bound by the parties' stipulation, any other evidence which the Commission wished to consider should have been made a part of the record:

All evidence * * * in the possession of the agency of which it desires to avail itself or which is offered into evidence by a party to a contested case proceeding, *shall* be made a part of the hearing record of the case. *No factual information or evidence shall be considered in the determination of the case unless it is part of the record.*

Minn.Stat. § 14.60, subd. 2 (1988) (emphasis added.) The Commission therefore erred by basing its decision upon the NSP study in Docket 604, which was not made a part of the record in the contested case proceedings. As the United States Supreme Court stated in *Morgan v. United States*, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938):

The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command.

*Id.* at 18–19, 58 S.Ct. at 776.

The Commission developed its order based upon a document which the parties were not allowed to contest, either in Docket 604 or during the general rate case proceedings. In light of the public importance of this matter, all parties should have been allowed the opportunity to present evidence on the decommissioning costs. As the Commission itself noted, the difference between the NSP study and the MHB study is significant. The actual decommis-

sioning will not occur for several years, and we see no urgency requiring immediate acceptance of either study. Remand is therefore appropriate for a more definitive decision on the disputed costs of decommissioning the three nuclear facilities.

Remand is also required in light of the fact that our review of the Commission's decision is confined to the record. Minn. Stat. § 14.68 (1988). *See Minneapolis Police Department v. Minneapolis Commission on Civil Rights*, 425 N.W.2d 235, 241 (Minn.1988) (supreme court refused to consider Commission minutes which were not a part of the record as mandated by Minn. Stat. § 14.68); *State ex rel. Spurck v. Civil Service Board*, 226 Minn. 253, 262, 32 N.W.2d 583, 588 (1948) ("administrative agency has no power or jurisdiction to make findings for which there is no evidentiary support"). *Cf. Matter of Hibbing Taconite Co.*, 431 N.W.2d 885 (Minn.Ct. App.1988) (documents which were not part of the record were allowed to be included because they were of public record); *In re St. Otto's Home v. Minnesota Department of Human Services*, 437 N.W.2d 35, 44 (Minn.1989) (supreme court found it unnecessary to reach the merits of relators' claim that the Commissioner had improperly considered a Department-commissioned study that was not introduced into evidence; the court found any potential error "harmless and non-prejudicial.")

Here, the record does not contain the NSP study upon which the Commission relied, and we find prejudicial error. The Commission's findings on the decommissioning costs were influenced by an error of law and may therefore be set aside on appeal. *In re Holden's Trust*, 207 Minn. 211, 227, 291 N.W. 104, 112 (1940).

We recognize that the Commission was authorized to take official notice of documents in a prior case. *See* Minn.Stat. § 14.60, subd. 4 (1988). Nevertheless, the parties must be allowed the opportunity to contest facts which are officially noticed. *See, e.g., Hibbing Taconite Co. v. Minnesota Public Service Commission*, 302 N.W. 2d 5, 12 (Minn.1980) ("in exercising its right to take judicial notice of facts, [the Com-

mission] must be amenable to consider evidence which attacks the truth of judicially noticed facts"); *Matter of Hibbing Taconite Co.*, 431 N.W.2d at 892 (Pollution Control Agency could take official notice of pollution problems; however, "official notice cannot constitutionally be used as a substitute for adjudicating specific facts and thereby dispensing with a hearing").

■ The Commission argues that the decision in Docket 604 regarding decommissioning costs constituted the law of the case and is therefore unreviewable in this appeal. We disagree. The law of the case doctrine is applicable to successive appeals. *See, Brezinka v. Bystrom Brothers, Inc.*, 403 N.W.2d 841, 843 (Minn.1987); *Hough Transit, Ltd. v. Harig*, 373 N.W.2d 327, 332 (Minn.Ct.App.1985). NSP's general rate case was not a continuation of or appeal from Docket 604, but was a separate and distinct action.

The Commission cites Minn.R. 7825.0900 (1987), which indicates that decommissioning costs certified by order are "binding on all future rate proceedings and will remain in effect until the next certification or until the commission shall determine otherwise." By its language in the Docket 604 order, however, the Commission indicated that the decommissioning costs could be reconsidered in NSP's general rate case. By opening the contested case hearing to this issue, the Commission was required to introduce into the record any evidence upon which it intended to rely, including the NSP study from Docket 604.

The Commission urges us to hold that the Docket 604 determination regarding decommissioning costs was res judicata.

> The doctrine of *res judicata* applies to administrative proceedings when the agency is acting in a judicial capacity and resolves disputed issues properly before it, which the parties have had an adequate opportunity to litigate.

*Hough*, 373 N.W.2d at 332 (quoting *Rainbolt v. Everett*, 6 Ark.App. 204, 207, 639 S.W.2d 532, 534 (1982)). The doctrine of res judicata is not applicable to all administrative proceedings, however. *Petition of Murphy Motor Freight Lines*, 428 N.W.2d

467, 470 (Minn.Ct.App.1988). As the court stated in *Brinker v. Weinberger*, 522 F.2d 13 (8th Cir.1975):

> Although application of the doctrine of res judicata to administrative decisions serves a useful purpose in preventing relitigation, it is not applied with the same rigidity as its judicial counterpart. Moreover, * * * "practical reasons may exist for refusing to apply it."

*Id.* at 15 (quoting *Grose v. Cohen*, 406 F.2d 823, 825 (4th Cir.1969) (citations omitted). The court recognized in *Thompson v. Schweiker*, 665 F.2d 936 (9th Cir.1982), that administrative res judicata "must be tempered by fairness and equity," which are "more important than finality of administrative judgments." *Id.* at 940–41. Both *Thompson* and *Brinker* cited *Grose*, where the court indicated: "When traditional concepts of *res judicata* do not work well, they should be relaxed or qualified to prevent injustice." *Grose*, 406 F.2d at 825 (citing 2 Davis, *Administrative Law*, § 18.03 (1958)).

We recently stated in *Wangen v. Commissioner of Public Safety*, 437 N.W.2d 120 (Minn.Ct.App.1989), *pet. for rev. denied* (Minn. May 12, 1989):

> Courts have not applied collateral estoppel and res judicata rigidly to the decisions of an administrative agency. "Both rules are qualified or rejected when their application would contravene an overriding public policy * * *."

*Id.* at 123 (quoting *Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125, 128 (6th Cir.1971)). The *Wangen* court quoted the following passage from W. Keppel & D. Gilbert, *Minnesota Administrative Practice and Procedure* § 624 at 119–20 (1982):

> "Court decisions are reflected in a judgment which is docketed and final; the trial court's work is at an end with regard to the matter. In the administrative process, however, agencies typically exert continuing supervisory and regulatory jurisdiction over the affected person. In addition, administrative policies are in a constant state of change, and administrative decision-makers are not only adjudicating but often policy-making. Finally, administrative agencies are charged by a legislative body with protecting public health, safety, and welfare, not merely resolving past adjudicative facts in light of existing law."

*Wangen*, 437 N.W.2d at 123. Here, the public importance of the issue involved, combined with principles of fairness and equity, lead us to conclude the doctrine of res judicata should not be applied to the circumstances of this case.

## DECISION

The Commission erred by basing its decision upon the extra-record NSP cost study. We reverse and remand for the purposes of allowing the parties to fully contest the NSP study.

Reversed and remanded.