**SURF AND SAND, INC., Appellant,**

v.

**Sandra S. GARDEBRING, Commissioner, Minnesota Dept. of Human Services, Respondent.**

**No. C3-90-236.**

Court of Appeals of Minnesota.

July 17, 1990.

Review Denied Sept. 20, 1990.

K. Craig Wildfang, Anthony J. Gleekel, Siegel, Brill, Greupner & Duffy, Minneapolis, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., John L. Kirwin, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by HUSPENI, P.J., and PARKER and NORTON, JJ.

## OPINION

HUSPENI, Presiding Judge.

The trial court found appellant's breach of contract claims to be res judicata under this court's prior affirmance of a Department of Human Services' ruling which required appellant to "pay back" monies to the Department of Human Services. Appellant alleges that this finding was erroneous. We affirm.

## FACTS

Appellant Surf and Sand, Inc. is a nursing home certified to participate in the federal Medicaid program. Medicaid is administered at the state level via Minnesota's medical assistance program, which is run by respondent Department of Human Services (DHS). In December of 1980 and of 1981, the parties entered "provider agree-

ments" drafted by DHS wherein DHS agreed to provide money to appellant for services rendered to medical assistance recipients. Under the provider agreements, DHS gave appellant money based on appellant's projected costs. Further, if the actual amount spent by appellant during the year for which the money was provided was less than appellant's projected costs, appellant would pay back the difference to DHS pursuant to "Rule 49" (then 12 MCAR 2.049; now Minn. Rules parts 9510.-0010–9510.0480 (1989)). Another of the agreement provisions stated: "[DHS] agrees to notify [appellant] of any changes in * * * Department of Public Welfare Rules 47 and 49."

At the time the parties entered their "provider agreements," nursing home cost changes from one year to the next were calculated under the "gross dollar" method if there was no material change in a facility's occupancy rate. If there was a significant change in the occupancy rate, the "per diem" method of calculating cost changes was used. On May 14, 1982, the Minnesota Supreme Court issued *White Bear Lake Care Center v. Department of Public Welfare*, 319 N.W.2d 7 (Minn.1982) which stated:

[DHS'] use of a per diem method of calculating implementation of known cost changes pursuant to [Rule 49] is improper because the method constitutes an unpromulgated rule.

*Id.* In November, 1982, DHS evaluated appellant's 1981 rate year under the "gross dollar" method even though appellant had incurred a substantial change in its occupancy. According to DHS' "gross dollar" calculations, appellant owed DHS $55,659; under the per diem method, appellant would have owed DHS $26,584.

Noting that *White Bear* was issued in 1982, appellant challenged DHS' use of the "gross dollar" method to calculate its 1981 "pay back." The commissioner adopted an administrative law judge's (ALJ) recommendation that retroactive application of the "gross dollar" method was appropriate to calculate appellant's 1981 costs. This court affirmed that result. *See Surf and*

*Sand Nursing Home v. Department of Human Services*, 422 N.W.2d 513 (Minn. App.1988), *pet. for rev. denied* (Minn. June 23, 1988).

In November, 1988, appellant served DHS with a summons and complaint recounting DHS' obligation to inform appellant of any change in "Rule 49." The complaint alleged:

13. DHS did not notify [appellant] that the rules had changed, and that DHS was going to apply the gross dollar method to [appellant] even though there had been a material change in [appellant's] occupancy.

14. DHS, by failing to give [appellant] notice, breached its contract with [appellant] to [appellant's] great detriment.

* * * * * *

16. DHS' failure to notify [appellant] of the rule change was a violation of DHS obligations to [appellant] and [appellant's] rights as defined under the state Medicaid Plan as required by 42 USC 1396a.

DHS subsequently moved for summary judgment on appellant's claims alleging that appellant's contract claims were res judicata under this court's prior ruling. The trial court granted DHS' motion. The trial court also granted summary judgment on appellant's federal claim noting that the relevant federal regulation did not require that appellant be notified of rule changes required by court order. Appellant now maintains that the trial court's summary judgment was error as a matter of law.

## ISSUES

1. Are appellant's present contract claims res judicata?

2. Did the trial court err in granting DHS summary judgment on appellant's federal claim?

## ANALYSIS

Under the rules, summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law.

Minn.R.Civ.P. 56.03. Additionally,

On appeal from a summary judgment it is the function of [an appellate court] only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Finally, "the nonmoving party has the benefit of that view of the evidence which is most favorable to him." *Sauter v. Sauter*, 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955), *quoted in Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981).

## I.

### A. DHS' JURISDICTION

■ By statute

A provider may appeal [to the commissioner] from a determination of a payment rate established pursuant to [Minn. Stat. § 256B] and reimbursement rules of the commissioner if the appeal, if successful, would result in a change to the provider's payment rate.

Minn.Stat. § 256B.50, subd. 1 (1988). Appellant argues that, since its claim based on the provider agreement's notice provisions does not relate to the payment rate,

[appellant] could not have brought the claims which arise out of the notice provisions [of the "provider agreements"] because [DHS] did not have jurisdiction to decide those claims.

We disagree.[1]

Generally,

An administrative agency's jurisdiction * * * is limited and is dependent entirely upon the statute under which it operates. "Jurisdiction of an administrative agency consists of the powers granted it by statute. Lack of statutory power betokens lack of jurisdiction. It is therefore well settled that a determination of an admin-

istrative agency is void and subject to collateral attack where it is made either without statutory power or in excess thereof."

*McKee v. County of Ramsey*, 310 Minn. 192, 195, 245 N.W.2d 460, 462 (1976) (quoting *State ex rel. Spurck v. Civil Service Bd.*, 226 Minn. 253, 259, 32 N.W.2d 583, 586 (1948)). Additionally,

Neither agencies nor courts may under the guise of statutory interpretation enlarge the agency's powers beyond that which was contemplated by the legislative body.

*Waller v. Powers Dept. Store*, 343 N.W.2d 655, 657 (Minn.1984).

In setting the parameters of allowable delegation, the supreme court has stated:

" * * * [T]he vesting by the legislature in the industrial commission of quasi-judicial powers—inclusive of the power to determine facts and apply the law thereto * * * is not in violation of state constitutional provisions for the division of the powers of government or for the vesting of the judicial power in the courts, as long as the commission's awards and determinations are not only subject to review by certiorari, but lack judicial finality in not being enforceable by execution or other process in the absence of a binding judgment entered thereon by a duly established court."

We believe that the [above] criteria * * * mark the outside limit of allowable quasi-judicial power in Minnesota.

*Wulff v. Tax Court of Appeals*, 288 N.W.2d 221, 223 (Minn.1979) (quoting *Breimhorst v. Beckman*, 227 Minn. 409, 433, 35 N.W.2d 719, 734 (1949)). We can say neither that allowing DHS to evaluate provider agreement disputes would be beyond the limits of allowable delegation nor that it would inappropriately expand DHS' jurisdiction.

The legislature has delegated authority regarding nursing home payments and payment disputes to DHS. *See* Minn.Stat. §§ 256B.431 (1988; Supp.1989); 256B.50.

---

1. Appellant's prior administrative action involved a claim that use of the gross dollar pay back calculation "impairs the contracts * * *

between the facilities and [DHS]." The ALJ rejected this claim, and the issue was settled before the contested case hearing.

Additionally, in administrating the state's medical assistance program, DHS is to

> [p]rescribe the form of, print, and supply to the county agencies, blanks for applications, reports, affidavits *and such other forms as it may deem necessary or advisable.*

Minn.Stat. § 256B.04, subd. 3 (1988) (emphasis added). The general delegation of authority for the complex nursing home payment system, combined with the specific delegation of authority for DHS to draft the documentation required to implement that system, suggests that the legislature believed that DHS' medical assistance expertise would aid in the drafting of the required documents. Because DHS' expertise facilitates drafting of the documents, DHS would also have an advantage in interpreting those documents should aspects of them be disputed. To conclude that DHS does not have jurisdiction to construe its own documents would deprive the dispute resolution process of the expertise the legislature thought necessary to administer the terms of the medical assistance program and to draft the documents required to implement that system. We conclude that provider agreement disputes are within DHS' jurisdiction.

■ This conclusion regarding jurisdiction is also supported by the fact that a nursing home cannot collect funds from the state without participation in the medical assistance program, the administration of which the legislature has delegated to DHS. The provider agreement is a significant part of a nursing home's participation in the medical assistance program and its relation with DHS. By statute this agreement is drafted by DHS. Therefore, whenever a nursing home contests its payments under Minn.Stat. § 256B.50, subd. 1, that contest may involve the meaning of the provider agreement. Here, appellant brings the provider agreement into dispute by alleging that DHS failed to comply with one of its notice provisions. Inasmuch as we have already determined that provider agreement disputes are within DHS' jurisdiction, it is clear that such jurisdiction would extend to specific provisions within those agreements.[2]

## B. RES JUDICATA

The Supreme Court has stated:

> *Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in · the prior proceeding.*

*Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979) (citations omitted) (emphasis added). The Supreme Court, however, has also cautioned:

> Because res judicata may govern grounds and defenses *not* previously litigated, however, it blockades unexplored paths that may lead to truth. It therefore is to be invoked only after careful inquiry.

---

2. Appellant argues in a footnote in its reply brief that it would be deprived of its right to a jury trial should DHS be found to have jurisdiction over "provider agreement" disputes. Initially, we note that this issue may not be properly before us. *See Byrd v. O'Neill,* 309 Minn. 415, 417, 244 N.W.2d 657, 658 (Minn.1976). Secondly, the Seventh Amendment does not apply to the states. *Minneapolis & St. Louis Railroad Co. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 596, 60 L.Ed. 961 (1916); *Genzel v. Halvorson,* 248 Minn. 527, 531, 80 N.W.2d 854, 855–56 (1957). Further, the right to a jury trial under Minn. Const. Art. I, § 4 and Minn.R.Civ.P. 38.01 refers to actions "conceived of as 'legal' so that such a right existed with respect to them, *at the time the Minnesota Constitution was adopted.*" *Olson v. Aretz,* 346 N.W.2d 178, 181 (Minn.App.1984) (emphasis added). Here, appellant seeks to sue DHS. Historically "[s]tate agencies vested with the performance of governmental function [were] immune from suit." *See Dunn v. Schmid,* 239 Minn. 559, 561–62, 60 N.W.2d 14, 16 (1953) (footnote omitted). While we recognize that the legislature has rescinded state immunity to contract suits, *see* Minn.Stat. § 3.751 (1988), we do not find that fact dispositive here. The legislature has also delegated authority regarding nursing home payments to DHS. *See* Minn.Stat. §§ 256B.431 (1988; Supp.1989); 256B.50, subd. 1 (1988). Application of the general statute directing that contract actions against the state proceed in district court conflicts with the specific statute delegating authority for nursing home payments to DHS. We must apply the specific statute. *See* Minn.Stat. § 645.26, subd. 1 (1988).

*Brown,* 442 U.S. at 132, 99 S.Ct. at 2210 (emphasis in original).

In Minnesota the doctrine of merger or bar is a branch of res judicata. In older cases that doctrine is also known as "estoppel by judgment" and

estoppel by judgment[ ] serves as an absolute bar to a subsequent suit on the same cause of action both as to matters actually litigated and as to other claims or defenses that *might have been litigated.*

*Rosenberg v. Steen,* 363 N.W.2d 102, 105 (Minn.App.1985) (emphasis added).

[Under this rule a] negative judgment, one against the plaintiff 'determines all the rights of the parties upon it' although it was but partially presented. *It bars 'new grounds of relief' upon the same cause of action which were not presented in the first case.*

*Melady–Briggs Cattle Corp. v. Drovers State Bank of South Saint Paul,* 213 Minn. 304, 309, 6 N.W.2d 454, 457 (1942) (citations omitted) (emphasis added).

■ In the agency context,

The doctrine of res judicata applies to administrative proceedings when the agency is acting in a judicial capacity and resolves disputed issues properly before it, which the parties have had an adequate *opportunity* to litigate.

*Hough Transit Inc. v. Harig,* 373 N.W.2d 327, 332 (Minn.App.1985) (emphasis added). However, "the doctrine of res judicata is not applicable to all administrative proceedings." *Application of Northern States Power Co.,* 440 N.W.2d 138, 141 (Minn.App. 1989). Specifically,

administrative res judicata "must be tempered with fairness and equity," which are "more important than finality of administrative judgments." [Further,] [w]hen traditional concepts of res judica-

ta do not work well, they should be relaxed or qualified to prevent injustice."

*Northern States,* 440 N.W.2d at 142 (citations omitted). *See also AFSCME Council 96 v. Arrowhead Regional Correction Board,* 356 N.W.2d 295, 299 (Minn.1984); *Wangen v. Commissioner of Public Safety,* 437 N.W.2d 120, 123 (Minn.App.1989), *pet. for rev. denied* (Minn. May 12, 1989).

■ Appellant alleges that its present action based on the provider agreement is distinct from its prior cause(s) of action. We disagree.

This court has stated that a cause of action is

[a] situation or state of facts which would entitle party to sustain action and give him [a] right to seek a judicial remedy in his behalf.

*Hofstad v. Hargest,* 412 N.W.2d 5, 7 (Minn. App.1987) (citation omitted). To allow application of res judicata in an administrative context, the appropriate construction of "judicial remedy" must include either administrative determinations or access to a state appellate court. Appellant obtained review in this court of the commissioner's prior ruling and subsequently petitioned for review to the supreme court. Therefore, administrative determination and access to the state's appellate courts were both present in the prior litigation. Thus, we must determine whether the prior and present causes of action are the same.

The Minnesota Supreme Court has stated:

The common test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions.

*McMenomy v. Ryden,* 276 Minn. 55, 58, 148 N.W.2d 804, 807 (1967) (quoting *Melady– Briggs,* 213 Minn. at 309, 6 N.W.2d at 457). Appellant argues that

The facts which support [its] district court claims are [DHS'] breach of the Provider Agreements [3] by failure to no-

---

**3.** Whether there is a breach of appellant's "provider agreement" is questionable. The agreement stated: "[DHS] agrees to notify [appellant] of any changes in * * * Rule[ ] 49." This court has stated:

Computing pay backs by the per diem method was merely a practice used by DHS. *It was neither a law nor a rule.*
*Broen Memorial Home v. Minnesota Department of Human Resources,* 364 N.W.2d 436, 440 (Minn.App.1985) (emphasis added). Arguably if

tify [4] [appellant] after May 14, 1982 of [DHS'] decision to cease its using of the "per diem" method [5] * * *.

We disagree.

Appellant's present and prior litigation both involve essentially the same evidence. Both cases involve the fact of the existence of the provider agreements, that after *White Bear's* termination of "per diem" pay back calculations the amount appellant owed DHS was calculated under the gross dollar method and that as a result of that "gross dollar calculation" appellant suffered damages. On these facts, we conclude that appellant's past and present claims involve the same cause of action under *Hofstad* and involve essentially the same evidence under *McMenomy.*[6] Therefore, appellant's present claim not only might have been but should have been addressed in the prior litigation.

## II.

■ Appellant's statement of the case also alleged that DHS' failure to notify appellant of changes in rule 49 was a violation of 42 U.S.C. § 1396a. The trial court stated: "Notice is not required when the change is necessitated by court order. 42 C.F.R. § 447.205(b)(2) (1981)."

Appellant's brief to this court does not address the federal claim. Generally,

An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection. *Louden [v. Louden,* 221 Minn. 338] 339, 22 N.W.2d [164] 166 (citations omitted).

*Balder v. Haley,* 399 N.W.2d 77, 80 (Minn. 1987). Because inspection of the instant case does not reveal obvious prejudice, we find no error in the trial court's award of summary judgment on appellant's federal claim. Here, *White Bear* ordered prohibition of the "per diem" pay back calculations. Under the regulations "Notice is *not* required if * * * (2) The change is required *by court order;* * * *." 42 C.F.R. § 447.205(b)(2) (1981) (emphasis added); *see also* 42 C.F.R. § 447.205(b)(2) (1989).[7]

## DECISION

DHS had jurisdiction to hear appellant's breach of contract claim which, in turn,

---

DHS agreed to inform appellant of changes in "Rule 49" and the per diem calculations were outside that rule, the prohibition of those calculations did not change the rule and no notice was required.

4. Appellant's claim of lack of notice is also weak.

"Men must turn square corners when they deal with the government." This observation has its greatest force when a private party seeks to spend the Government's money. * * * [T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.

*Heckler v. Community Health Services of Crawford,* 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (footnote omitted) (quoting *Rock Island, A & L.R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920)).

5. The supreme court in *White Bear* prohibited per diem calculations. Thus, assuming DHS actually made a decision it was doing only what the Supreme Court ordered.

6. Respondent argues that the appropriate test to evaluate the similarity of the actions is the "same transaction" test used in *Movie Systems,*

*Inc. v. Abel,* 99 F.R.D. 129 (D.Minn.1983), *cited in Anderson v. Werner Continental, Inc.,* 363 N.W.2d 332, 335 (Minn.App.1985), *pet. for rev. denied* (Minn. June 24, 1985). Because *Movie Systems* addressed permissive joinder of parties, we do not apply it here, though we note it would produce the same result. Similarly, we note that under a test presented in *Hauser v. Mealey,* 263 N.W.2d 803, 807 (Minn.1978) mentioned in appellant's brief, we would conclude that both motions arose out of the same set of facts. Thus, no matter which test is applied, the same result is attained.

7. Additionally, 42 C.F.R. § 447.205(b)(2) renders academic appellant's argument that DHS did not have jurisdiction to adjudicate its own violation of a federal law. If DHS did have jurisdiction and the issue was res judicata, the trial court's grant of summary judgment was appropriate on those grounds. Alternatively, if DHS either did not have jurisdiction or did have jurisdiction but the issue is not deemed res judicata, the issue would have been properly before the trial court in this action. In each of these scenarios, however, summary judgment was appropriate under 42 C.F.R. § 447.205(b)(2).

was essentially a separate attempt to recover for DHS' application of the "gross dollar" method of calculating appellant's pay back. Because that issue had previously been litigated and decided, the trial court did not err in applying the doctrine of res judicata and granting summary judgment.

Affirmed.