Uriah PETERSON, By and Through Joel PETERSON and Gayle Peterson, his parents and natural guardians, Plaintiffs,

v.

INDEPENDENT SCHOOL DISTRICT NO. 811, a municipal corporation, and John Mattison, Superintendent of Independent School District No. 811, in both his individual and representative capacity, Defendants.

Civil No. 97–19 (DSD/JMM).

United States District Court, D. Minnesota.

April 9, 1998.

666

apolis, MN, for Independent School District No. 811, John Mattison.

## ORDER

DOTY, District Judge.

This matter is before the court on the cross-motions for summary judgment of plaintiff Uriah Peterson and defendants Independent School District No. 811 and John Mattison. Based on a review of the file, record, and proceedings herein, the court grants defendants' motion and denies plaintiff's motion.

## BACKGROUND

Plaintiff Uriah Peterson, at all relevant times, was a resident of Wabasha County Minnesota and a student enrolled at Wabasha–Kellogg High School within defendant Independent School District No. 811. Plaintiffs Joe and Gayle Peterson are Uriah Peterson's parents.[1] Defendant John Mattison, at all relevant times, was the Superintendent of Schools for Independent School District No. 811.[2]

On October 8, 1994, Uriah Peterson, after playing football with a group of boys behind Wabasha–Kellogg High School, climbed into the bed of a pick-up truck with several other boys. Peterson noticed a BB gun lying in the bed of the pick-up truck. The pickup truck proceeded to the front of the school where it stopped, one of the boys in the back exited the vehicle, and the remaining passengers started speaking with others in the parking lot. Richard Hartshorn, the Principal of the elementary school in Independent School District No. 811, was also in the parking lot, and noticed one of the truck's occupants holding the BB gun. After the truck and its occupants briefly exited and re-entering the school parking lot, Hartshorn allegedly watched one of the boys in the truck raise the gun and position it on his shoulder in a shooting position. Hartshorn then left the parking lot and sought the assistance of a police officer.

George Floyd Restovich, Restovich Law Office, Rochester, MN, for Uriah Peterson, by and through, Joel Peterson and Gayle Peterson, his parents and natural guardians, plaintiff.

Daniel Q. Poretti, Timothy James Pawlenty, Rider Bennett Egan & Arundel, Minne-

1. Uriah, Joel, and Gayle Peterson will be referred to collectively as "plaintiff."

2. Independent School District No. 811 and John Mattison will be referred to collectively as "defendants."

Hartshorn located Wabasha City Police Officer Todd Baab and the two returned to the school parking lot. The truck was no longer at the scene, but Officer Baab approached a group of boys loitering in the parking lot and inquired about the incident. The truck then reappeared, still loaded with several occupants. Officer Baab stopped the vehicle and questioned the occupants, who admitted having a gun on school property, but told Officer Baab that the gun had been dropped off at the home of one of the truck's occupants. Officer Baab proceeded to the home of the student who owned the gun and determined that the rifle was a BB gun.

Hartshorn, defendant Mattison, Officer Baab, and Wabasha City Police Chief David Krueger met on October 10, 1994, to discuss the gun incident. Because possession of a weapon on school property is a felony offense,[3] a police investigation ensued. County Attorney James Nordstrom, however, later determined that insufficient evidence existed to support a violation of criminal law.

On November 22, 1994, the school board of Independent School District No. 811 met in a closed session to discuss the gun incident. There is some dispute as to whether the board decided to suspend Uriah Peterson at that time.[4] The next day, November 23, 1994, Mattison and his secretary, Connie LaRocque, interviewed all five students involved, including Uriah Peterson. At his interview, Uriah Peterson admitted being in the back of the pick-up truck during the October 8, 1994 incident and admitted being aware that the gun was in the back of the truck with him and the other boys. Mattison, after affording Uriah Peterson the opportunity to explain his side of the incident, suspended him pending an expulsion hearing before the school board.

On November 28, 1994, the Petersons were sent a "Notice of Intended Action and Hearing," informing them of an expulsion hearing set for December 6, 1994, and containing a statement of facts, a list of witnesses, and a description of the anticipated testimony. Exhibit 2 to Affidavit of David D. Kuhl (Docket No. 35). The expulsion hearing took place on December 6, 1994, before the Wabasha–Kellogg school board. Plaintiff was represented at the hearing by his father, Joel Peterson. The testimony established that, while plaintiff did not bring the 33 gun onto school property, did not know of the gun's presence until after he had gotten into the truck, and did not handle the gun, plaintiff was in the truck, was aware of the gun's presence, and

---

**3.** Minn.Stat. § 609.66, subd. 1d(a) provides:

Whoever possesses, stores, or keeps a dangerous weapon or uses or brandishes a replica firearm or BB gun on school property is guilty of a felony and may be sentenced to imprisonment for not more than two years or to payment of a fine of not more than $5,000, or both.

Further, Minn.Stat. § 609.66, subd. 1d(b) provides that "[w]hoever possesses, stores, or keeps a replica firearm or a BB gun on school property is guilty of a gross misdemeanor."

**4.** The minutes of the November 22, 1994 special school board meeting read

Motion by [member] Graupner, seconded by [member] Christenson, to direct administration to proceed with a recommendation for expulsion of students involved in the 10/08/94 incident on school property, said students to be suspended effective 11/28/94 and to continue until an expulsion hearing date. YES: J. Danckwart, G. Christenson, M. Wallerich, K. Graupner, R. Nelson. NO: T. Pfeilsticker. ABSENT: C. Heins.

Exhibit G to Affidavit of Bruce K. Piotrowski in Support of Plaintiff's Motion for Partial Summary Judgment (Docket No. 26).

Defendant has submitted the affidavits of board members John Danckwart, Tom Pfeilsticker, and Kathy Graupner, all of whom aver that at the November 22, 1994 board meeting

3. County Attorney Jim Nordstrom advised the board as to his investigation of the gun incident. The board and John Mattison discussed continuing the investigation of the October 8, 1994 gun incident and, if warranted, to proceed with an expulsion hearing. The board agreed with Mr. Mattison that, if there was a basis to move forward with an expulsion hearing, the students would be suspended pending the hearing.

4. The minutes from the November 22, 1994 school board meeting ... do not reflect a directive to John Mattison or the administration to suspend Uriah Peterson or any of the other students involved in the gun incident prior to a completion of the investigation. As is always the case with the Wabasha–Kellogg school board, disciplinary action is taken only after the appropriate investigation has occurred.

Exhibits A, B, and C to Second Affidavit of David D. Kuhl (Docket No. 28).

did not exit the vehicle even though he was aware that it was against the rules to have a gun on school property.

The Wabasha–Kellogg school board on December 7, 1994, voted to expel Uriah Peterson and the other four students involved in the gun incident until December 12, 1994, for violating the school Dangerous Weapons Policy. Peterson was also prohibited from participating in extra-curricular activities through January 2, 1995. On December 9, 1994, the Petersons filed a notice of appeal with the Minnesota Department of Education.[5] The Petersons challenged the school board's action on both procedural and substantive due process grounds. On January 13, 1995, the Department reversed the school board's expulsion and ordered that all records regarding the incident be expunged from Peterson's file on the basis that "substantial evidence on the record does not support a conclusion that student's conduct violated reasonable school board regulations which were sufficiently clear and definite as to provide notice to the student that he must conform his conduct to its requirements." Findings of Fact, Conclusions of Law, Discussion, and Decision and Order of Commissioner of Education, Exhibit L to Affidavit of Bruce Piotrowski (Docket No. 26) (hereafter "Findings and Conclusions") at 8. The Department also held, however, that all pre-hearing procedural requirements were met and the hearing before the school board met the procedural requirements of the Pupil Fair Dismissal Act, Minn.Stat. § 127.26 *et seq.*

Rather than appeal the Department's final decision through the state courts pursuant to Minn.Stat. § 127.33, plaintiff chose to file this federal action on January 3, 1997, nearly two years after the Department reversed the expulsion decision of the Wabasha–Kellogg School Board. Plaintiff alleges that defendants violated his procedural and substantive due process rights by suspending and subsequently expelling him without a fair hearing and without substantial evidence to support the conclusion that he had violated a school policy. Plaintiff also alleges, based on the same facts, that defendants failed to follow the procedures set out in the Minnesota Pupil Fair Dismissal Act. Plaintiffs seek monetary relief pursuant to 42 U.S.C. § 1983. The parties have filed cross-motions for summary judgment, which are now properly before the court for decision.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue that facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See*

---

**5.** The Minnesota Department of Education is now called the Minnesota Department of Children, Families, and Learning and will be referred to as "the Department."

*Anderson,* 477 U.S. at 250–51. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23.

■ Plaintiff's complaint alleges three causes of action. Counts One and Two are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

A school district is considered a "person" for purposes of § 1983 liability. *See Stephenson v. Davenport Community School Dist.,* 110 F.3d 1303, 1306 n. 2 (8th Cir.1997) (citing *Keckeisen v. Independent School Dist. 612,* 509 F.2d 1062, 1065 (8th Cir.1975), *cert. denied,* 423 U.S. 833, 96 S.Ct. 57, 46 L.Ed.2d 51 (1975)). In Count One, plaintiff alleges that he:

was suspended and/or expelled without probable cause by Defendants who, under the facts available, did not have an objective, good-faith belief that Plaintiff had committed the offense(s) of which he was accused. That such expulsion and exclusion from extracurricular activities was done in violation of Plaintiff's rights to due process under law under the Fourteenth Amendment of the United States Constitution.

Complaint (Docket No. 1) at ¶ 14. Because the complaint is entirely unclear as to whether plaintiff is alleging a violation of his procedural or substantive due process rights, the court is forced to consider both.

Plaintiff alleges in Count Two that the "decision of Defendants on December 21, 1995, to further prohibit Plaintiff from participating in extracurricular activities until March 9, 1995, was motivated by malice, and

was made in retaliation for Plaintiff's appeal of the District's decision on December 7, 1994, to expel Plaintiff, to the Commissioner of the Minnesota Department of Education," in violation of his due process rights. Finally, plaintiff alleges in Count Three that his suspension and expulsion from Wabasha–Kellogg High School was in violation of Minn. Stat. § 127.29, subd. 2.

Both plaintiff and defendants have moved for summary judgment in this case. Defendants seek summary judgment on all the allegations in the plaintiff's complaint, and set out four bases why plaintiff's claims are legally inadequate: (1) issue and claim preclusion; (2) failure to exhaust state remedies; (3) no violation of Uriah Peterson's due process or state dismissal law rights occurred; and (4) defendant Mattison has qualified immunity. Plaintiff seeks partial summary judgment on the procedural and substantive due process and Dismissal Act issues surrounding his November 1994 suspension and ensuing temporary expulsion. Given the court's disposition of defendants' motion, little need be said concerning plaintiff's motion.

**a. Issue and Claim Preclusion**

■ As an initial matter, defendants argue that plaintiff's claims are barred by issue and claim preclusion. The two doctrines are closely related. Issue preclusion, also called collateral estoppel, provides that " 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.' " *Plough By and Through Plough v. West Des Moines Community School Dist.,* 70 F.3d 512, 515 (8th Cir.1995) (citing *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). Claim preclusion, also known as res judicata, provides that " 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Id.* The court finds that in this case both issue and claim preclusion bar plaintiff's Claims.

■ When a state agency, acting in a judicial capacity, resolves disputed issues of fact properly presented which the parties have

had an adequate opportunity to litigate, a federal court must give the agency's factfinding the same preclusive effect to which the finding would be entitled in the state's courts. *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Plough,* 70 F.3d at 515. In this case, the Department was acting in a judicial capacity when it held an adversarial evidentiary hearing to review the decision of the Wabasha–Kellogg School Board to expel plaintiff. In addition, the questions litigated were properly before the Department pursuant to Minn.Stat. § 127.32 and the parties had an adequate opportunity to litigate the relevant issues. The parties were afforded the opportunity to make their arguments through both oral testimony and written briefs. Therefore, this court must afford the Department's decision the same preclusive effect that would be given by a Minnesota court.

■■■ Under Minnesota law, for collateral estoppel to apply to an agency decision, five factors must be met: (1) the issue to be precluded must be identical to the issue raised in the prior agency adjudication; (2) the issue must have been necessary to the agency adjudication and properly before the agency; (3) the agency determination must be a final adjudication subject to judicial review; (4) the estopped party was a party or in privity with a party to the prior agency determination; and (5) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Falgren v. State, Bd. of Teaching,* 545 N.W.2d 901, 905 (Minn.1996); *Graham v. Special School Dist. No. 1,* 472 N.W.2d 114, 116 (Minn.1991); *Ellis v. Minneapolis Com'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982). The court finds that all five of these factors have been met, and collateral estoppel applies to plaintiff's procedural due process and Dismissal Act claims.

First, the issues presented by plaintiff's complaint are identical to the issues raised before the Department. Before the Department, plaintiff asserted that he was not provided adequate notice of his suspension or the expulsion hearing, that the District's enforcement of the Dangerous Weapons Policy

against him was wrongful, and that the school district's attorney improperly assumed multiple roles at the expulsion hearing. The Department concluded as a matter of law that "all prehearing procedural requirements were met" and that "the hearing met the procedural requirements of Minn.Stat. § 127.31." Findings and Conclusions at 7. Plaintiff now wishes to relitigate the identical procedural issues in this forum that were resolved against him by the Department.

The procedural issues were also necessary to the Department's decision and were properly before the agency. The Department's decision is set forth in 10 paragraphs under the heading "Conclusions of Law," and expressly dictates that adequate notice was given and the hearing met all procedural requirements. While elsewhere in the Department's discussion of its findings the Commissioner expresses reservations at the dual role played by the school district's attorney, this discussion does not trump the clear conclusions of law.

The final three elements are also easily met. The Department's determination was a final adjudication subject to judicial review. *See* Minn.Stat. § 127.33 ("The decision of the commissioner of children, families, and learning ... is subject to judicial review[.]"). Plaintiff was a party to the prior agency determination. Finally, plaintiff was given a full and fair opportunity to be heard on the adjudicated issues. All of the procedural safeguards provided by the Dismissal Act were followed in this case. Collateral estoppel therefore applies, and plaintiff will not be allowed to relitigate here the procedural due process and Dismissal Act issues determined adversely to him by the Department.

■■■ Claim preclusion as well as issue preclusion applies in this case. Again, this court must give the Department's decision the same preclusive effect as would be given by a Minnesota state court. *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). The Minnesota Court of

Appeals has held that in the agency context " 'the doctrine of res judicata applies to administrative proceedings when the agency is acting in a judicial capacity and resolves disputed issues properly before it, which the parties have had an adequate opportunity to litigate.' " *Surf and Sand, Inc. v. Gardebring,* 457 N.W.2d 782, 787 (Minn.Ct.App.1990) (quoting *Hough Transit, Ltd. v. Harig,* 373 N.W.2d 327, 332 (Minn.Ct.App.1985)). The Department in this case, as has already been discussed, was acting in a judicial capacity in resolving the plaintiff's dispute with the Wabasha–Kellogg Board of Education. The court notes that the party against whom res judicata is to be applied must have had a full and fair opportunity to investigate and litigate the matter concluded. *Plough,* 70 F.3d at 517 (citing *Smith v. Updegraff,* 744 F.2d 1354, 1362 (8th Cir.1984)). Such an opportunity was provided to plaintiff, and the application of res judicata principles to his procedural due process and Dismissal Act claims would not be unfair or inequitable. Plaintiff is attempting to bring before this forum the same claims brought before the Department, and he may not simply "repackage" his due process and Dismissal Act claims and present them to this court pursuant to 42 U.S.C. § 1983 when such claims have already been decided.

### b. Failure on the Merits

In addition, each of plaintiff's allegations fails on the merits. The court will consider in turn plaintiff's procedural and substantive due process claims as pleaded in Count One and Two of the Complaint and his Fair Dismissal Act claim as pleaded in Count Three of the complaint.

The court's conclusions as to the procedural due process to be accorded plaintiff are largely determined by the alleged deprivation suffered. A brief recitation of the facts is therefore helpful. On November 23, 1994, Mattison and LaRocque interviewed plaintiff.

At the interview, plaintiff admitted being aware that the gun was in the back of the truck. After being given an opportunity to explain his position, Mattison informed plaintiff that he was being suspended pending an expulsion hearing. The expulsion hearing occurred on December 6, 1994, and conformed with all the requirements of the Dismissal Act. Plaintiff was "expelled" from December 7, 1994 until December 12, 1994, on which date plaintiff was again allowed to attend regular academic classes. By the court's calculation, plaintiff missed at most a total of ten school days.[6]

■ The court's analysis is guided by the Supreme Court's decision in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). There, high school students were suspended for 10 days for disruptive conduct without first receiving a hearing. In finding a violation of their due process rights, the Supreme Court held that students facing suspension must be given some kind of notice and afforded some kind of hearing, which, in cases involving a suspension of ten days or less, means "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss,* 419 U.S. at 581. The Court further explained that:

> [t]here need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.

*Id.* at 582. As the Court itself made clear, the procedural prerequisites to a short suspension are not extensive. *Id.* at 583. "In

---

**6.** The court arrived at this number as follows: November 23, 1994, the day of plaintiff's suspension, was a Wednesday. November 24 was Thanksgiving, November 25 a school holiday, and November 26 and 27 a weekend. Plaintiff was suspended the week of November 28 through December 2, and five days of school were missed. Plaintiff was suspended and then "expelled" the week of December 5 through December 9, meaning another five days of school were missed. Thus, plaintiff missed at most a total of ten days of regular classes between his suspension and expulsion.

the context of a brief suspension from school, students are entitled only to rudimentary procedural safeguards." *Bystrom By and Through Bystrom v. Fridley High School,* 686 F.Supp. 1387, 1394 (D.Minn.1987), *aff'd,* 855 F.2d 855 (8th Cir.1988).

Upon examining the record, the court concludes that plaintiff received far more process than the minimum required by this case. Plaintiff was fully apprised of the accusation made against him, both during his interview with Mattison and before the school board hearing. Upon being called into Mattison's office, plaintiff admitted being involved in the gun incident and was allowed to tell his side of the story. Plaintiff's parents were informed of the allegations against their son and the school provided all the procedures required by the Fair Pupil Dismissal Act at the December 6, 1994 hearing, including a notice setting forth the time, place, and date of the hearing, and containing a statement of the underlying·facts. · At the hearing, Joel Peterson presented evidence and testimony and cross-examined witnesses. Indeed, the record demonstrates that plaintiff was afforded every procedural protection provided by the Dismissal Act, and no violation of plaintiff's procedural due process rights occurred.[7]

Defendants are also correct in arguing that plaintiff has failed to allege facts constituting a violation of his substantive due process rights. In order to establish a violation of his substantive due process rights, plaintiff would have to show arbitrary and capricious conduct on the part of the school board. *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir.1990) (finding misjudgment of law not to be so egregious ·and irrational as to give rise to substantive due process violation); *Hines v. Rinker,* 667 F.2d 699, 703 (8th Cir.1981). Conduct is arbitrary and capricious only if there is no rational basis for a decision or a decision is motivated by bad faith or ill-will. *Id.* "The theory of substantive due process is properly reserved for truly egregious and extraordinary cases."

*Myers v. Scott County,* 868 F.2d 1017, 1017 (8th Cir.1989).

Plaintiff has failed to identify any conduct on the part of the defendants that constitutes a violation of his substantive due process rights. While the Department found that "substantial evidence on the record does not support a conclusion that [plaintiff's] conduct violated reasonable school board regulations which were sufficiently clear and definite as to provide notice to the [plaintiff] that he must conform his conduct to its requirements," and reversed the decision of the district to expel the plaintiff, such a finding does not mean the school board's actions were egregious, irrational, or motivated by ill-will. Indeed, the school district's enforcement of its Dangerous Weapons Policy furthers the district's legitimate interest in maintaining a safe environment and is rationally related to that interest. Especially when viewed in light of the substantial deference to be accorded school administrators in matters such as student discipline and maintaining order, the court finds no violation of plaintiff's substantive due process rights. · Plaintiff's argument that a substantive due process violation exists because the Department concluded there was no substantial evidence showing a violation of school policy is simply incorrect.

Count Two of the complaint alleges that the Wabasha–Kellogg School Board retaliated against plaintiff for appealing the board's expulsion decision by extending plaintiff's ban from extracurricular activities until March 9, 1995. The court finds that this allegation is completely without support in the record. To the contrary, there is evidence that plaintiff violated the terms of the school board's December 7, 1994 ban from extracurricular activities by attending a school dance. In response, the school board extended the extra-curricular prohibition from January 2, 1995 until the end of the trimester, or March 9, 1995. Because plaintiff has failed to point to any evidence to support his claim, summary judgment is appropriate on Count Two of the complaint.

7. In addition, violations of state law do not by themselves give rise to a claim under § 1983, which vindicates only federal rights. Plaintiff, therefore, may not base his § 1983 claim on a violation of the Dismissal Act. *Ebmeier v. Stump,* 70 F.3d 1012, 1013 (8th Cir.1995).

■ Even if evidence to support plaintiff's claim did exist, the court finds that no property or liberty interest exists in a student's participation in extracurricular activities. *See Davenport by Davenport v. Randolph County Bd. of Educ.*, 730 F.2d 1395, 1397 (11th Cir.1984); *Hebert v. Ventetuolo*, 638 F.2d 5, 6 (1st Cir.1981); *Walsh v. Louisiana High School Athletic Ass'n*, 616 F.2d 152, 159 (5th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). The court notes that in *Behagen v. Intercollegiate Conference of Faculty Representatives*, 346 F.Supp. 602 (D.Minn.1972), the court held that the "opportunity to participate in intercollegiate athletics is of substantial economic value to many students" and participation in athletics is therefore a property interest for due process purposes. *Behagen*, 346 F.Supp. at 604. That case is easily distinguishable, however, as there the student was a member of the University of Minnesota basketball team and the possibility of a professional basketball career was of such substantial economic value that a property interest was found to exist. While *Behagen* cites *Kelley v. Metropolitan County Bd. of Ed. of Nashville and Davidson County, Tennessee*, 293 F.Supp. 485 (M.D.Tenn. 1968), for the proposition that high school students' interests in participation in athletics are so substantial that they cannot be impaired without minimal due process, the court finds this statement unpersuasive in light of *McFarlin v. Newport Special School Dist.*, 980 F.2d 1208 (8th Cir.1992). There, the Eighth Circuit commented that "there is no clearly established right of parents to have their children compete in interscholastic athletics." *McFarlin*, 980 F.2d at 1211. As no property interest exists entitling plaintiff to due process before being excluded from extracurricular activities, summary judgment on Count Two is appropriate on this basis alone.

■ Count Three alleges a violation of the Minnesota Pupil Fair Dismissal Act. Such Act provides, in relevant part, that:

A pupil may be dismissed on any of the following grounds:

(a) willful violation of any reasonable school board regulation. Such regulation must be clear and definite to provide notice to pupils that they must conform their conduct to its requirements;

(b) willful conduct that materially and substantially disrupts the rights of others to an education; or

(c) willful conduct that endangers the pupils or other pupils, or surrounding persons, or property of the school.

Minn.Stat. § 127.29, subd. 2. Here, plaintiff alleges that he "was suspended and/or expelled from Wabasha–Kellogg High School by Defendants without a reasonable and good-faith belief that Plaintiff willfully violated any reasonable rule or regulation of the District or that Plaintiff engaged in willful conduct which endangered himself, or other pupils, or District property[.]" Complaint ¶ 17.

While it is true that the Department found insufficient evidence to support a conclusion that plaintiff's conduct violated the district's Dangerous Weapons Policy and reversed the school board's decision to expel plaintiff, such a conclusion does not make the school board's decision arbitrary or unreasonable. The school board afforded plaintiff all the procedure that was required under the Dismissal Act. When given the opportunity to explain his side of the story, plaintiff admitted being in the truck and admitting knowing a gun was present. While plaintiff may not agree with the decision reached by the school board, such result is not in contravention of the law. Because plaintiff can proffer no facts from which a jury could return a verdict for him, summary judgment is appropriate.

### c. Qualified Immunity

■ Finally, the court finds that any claims against defendant Mattison are barred by the doctrine of qualified immunity. As Superintendent of the Wabasha–Kellogg school district, Mattison is immune from civil damages insofar as his conduct does not violate clearly established statutory or constitutional rights of another of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214

(1975). While Mattison may have disciplined plaintiff despite knowing he was never in possession of the gun, Mattison's determination that the Dangerous Weapons Policy had nevertheless been violated is not a clear violation of plaintiff's rights. Plaintiff attempts to obfuscate the issue by arguing that "Mattison was perfectly aware of the requirements of the Fair Pupil Dismissal Act or should have been aware of them and therefore, know or reasonably should of [sic] known, that Plaintiff had not violated any policy of the School District as he was not in possession of the BB gun." Mem. in Response to Def's Mot. for Summ. J. at 20. However, the Department concluded that all procedural requirements were met, and given the danger presented by the presence of a firearm in a school zone, Mattison was eminently reasonable in his construction of the Dangerous Weapons Policy. While his definition of "possession" of a weapon may be more expansive than that taken by the Department, no knowing violation of plaintiff's rights occurred.

## CONCLUSION

While students do not "shed their constitutional rights ... at the schoolhouse gate," *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the court must exercise caution whenever it is asked to intrude upon the operations of a public school system. *Stephenson*, 110 F.3d at 1306. In this case, plaintiff has failed to overcome a number of barriers necessary to federal court review. In addition, his claims of constitutional and statutory violations fail on their merits. For these reasons, the court must grant defendants' motion for summary judgment and deny plaintiff's motion for partial summary judgment. Therefore, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment of defendants Independent School District No. 811 and John Mattison is granted;

2. The motion for partial summary judgment of plaintiff Uriah Peterson is denied;

3. This action is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**