**HOUGH TRANSIT, LTD., Relator,**

v.

**Thomas F. HARIG, Department of Economic Security, Respondents.**

**No. C2–85–424.**

Court of Appeals of Minnesota.

Aug. 20, 1985.

Jeffrey R. Hannig, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for relator.

Thomas F. Harig, pro se.

Hubert H. Humphrey, III, Minnesota Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Relator Hough Transit, Inc. appeals the Commissioner of Economic Security's determination that (1) milk truck drivers contracting with relator were relator's servants and (2) relator's president was an employee for purposes of the unemployment compensation law. We reverse.

## FACTS

Hough Transit owns seven milk trucks that haul milk in bulk from dairy farms to creameries owned by Kraft, Inc. and the National Farmers' Organization (NFO). Hough Transit's name appears on the trucks, the trucks are licensed in the name of Hough Transit, and Hough Transit provides insurance on the trucks.. These items are required by state regulations.

Hough Transit has a written agreement with each of the truck drivers. Under the agreements, relator provides a truck to be used only for milk hauling as provided by relator's license. The agreement also provides that the relator will:

furnish all insurance, tires, all normal maintenance, etc. All abnormal abuse shall be charged to the lessee * * *. Any Social Security tax on profits will be paid by the lessee, also income tax or workmen's compensation will be taken by the lessee.

The agreement may be terminated by 30 days written notice from the driver and 7 days notice by relator. The drivers receive compensation consisting of a percentage of gross receipts. The agreement includes a provision stating the driver is not a direct employee of relator.

Each driver is assigned a specific territory by Hough Transit. Hough Transit's customers, Kraft or NFO, tell the drivers which farms to collect milk from. Hough Transit has no contact with the farmers. Drivers may hire someone else to drive their truck, and Hough Transit does not know who is driving its trucks on any given day. Drivers are responsible for paying their replacements. Drivers are not re-

quired to report to Hough Transit on any regular basis. Drivers and their trucks may not be seen for several months. Kraft and NFO deal directly with the drivers regarding any problems. Serious problems will also be brought to the attention of Hough Transit.

The drivers receive receipts from the creameries for milk delivered. Copies of the receipts are also sent to Hough Transit, and payment is made directly to Hough Transit on a bi-monthly basis. Hough Transit then issues checks to the drivers. On occasion, payments have also been made directly to the drivers who then paid Hough Transit. When Hough Transit pays the drivers, nothing is withheld for state or federal income tax or social security.

On November 19, 1981, the Department of Economic Security mailed a determination to relator that it was an employer under Minn.Stat. §§ 268.03–.24. The determination letter stated:

[I]t has been determined that you exercise sufficient control and direction over services performed by your milk hauler route drivers to establish an employer-employee relationship. You are required to report and pay taxes on remuneration paid to these workers. This includes services performed by Thomas F. Harig * *, persons similarly employed, and any assistants employed by the drivers.

Relator appealed this determination to a Department referee.

The referee took evidence and determined (1) Hough Transit was an employer under Minnesota employment services law, (2) an employer-employee relationship existed between relator and the drivers, (3) president James Hough was an employee and his remuneration was subject to unemployment tax, and (4) the tax rate assessments made by the Department were in compliance with the law and facts. Relator appealed, and the matter was heard by a representative of the Commissioner.

The Commissioner's representative vacated the referee's findings and decision and remanded the matter to the referee. The Commissioner's representative found

the record did not support the referee's conclusion that the drivers were employees, stating:

The facts of record indicate that the procedures for handling and hauling milk are largely dictated to the route drivers to whom the employer leases its trucks by the Kraft and NFO dairy businesses with whom the employer has a contractual agreement as supplier and customer and not by the employer herein. The Referee disposes of this problem by stating in his reasons for decision that "the employer has authorized the dairy to set milk hauling schedules and to give detailed instructions. The dairy does not thereby become the driver's employer but merely the employer's representative or agent." The difficulty is that there is no evidence in the record as to whether Kraft and the NFO are the employer's agents or are merely customers who can set their own standards. We therefore specifically remand to obtain evidence as to the relationship between Kraft and NFO and the employer.

The Commissioner's representative also found the referee erroneously held the tax rates used by the Tax Branch of the Department of Economic Security had been calculated properly. The representative found the record "completely devoid of any evidence whatever as to who computed the tax rate herein and how it was computed." The representative directed the referee to receive testimony from a representative of the Tax Branch on remand.

Finally, the representative held the referee's determination that Hough Transit's president was an employee was of not effect because the original determination did not encompass that employee:

It is observed that the Referee made a gratuitous decision that the president of the employer is an employee of the employer and his remuneration is subject to the Minnesota unemployment law for tax and benefit purposes. That may well be true from and since the date of the employer's incorporation on December 1, 1981, but that matter was not addressed in the initial determination and was not before the Referee for a decision.

The matter was then heard for a second time before a Department referee. James Hough testified that Kraft and NFO were not Hough Transit's agents and reiterated his testimony regarding control over the drivers. Hough's testimony and the record from the first hearing were submitted as the record and basis for decision. No other testimony or evidence was introduced.

The second referee's decision was filed and mailed on August 30, 1984. This decision affirmed the Department's November 19, 1981 determination without following or addressing the specific instructions contained in the representative's decision. The second referee reached the same four conclusions as the first referee. The second referee (1) did not address whether Kraft and NFO were Hough Transit's agents, (2) did not take testimony concerning the tax rate calculations, and (3) overlooked the representative's statement that the status of the president of Hough Transit was not before the referee.

Relator then appealed a second time to a Commissioner's representative. On appeal, relator contended the second referee's decision was not supported by the evidence and that the second referee failed to follow the remand instructions issued by the first Commissioner's representative.

On February 14, 1985, the second representative filed and mailed his decision affirming the second referee. Although recognizing the referee failed to call a witness regarding calculation of tax rates, the second representative concluded:

To order an evidentiary hearing on this sole point is simply not worth the time and expense. Should Hough Transit Limited be dissatisfied with how the tax rates were computed they may appeal from that, and separate proceedings would be conducted on that sole issue.

The second representative also recognized the first representative's instruction to receive evidence regarding the relationship between Hough Transit and its customers was not followed. Although this

point was the crux of the first representative's decision to vacate the first referee's findings regarding an employer-employee relationship between Hough Transit and the drivers, the second representative concluded:

> Even though no additional evidence was presented on this point, we see no reason to remand the case again as that point is not determinative of the question in issue.

The second representative affirmed the second referee's finding that the president of Hough Transit was subject to economic security taxes and benefits. The second representative did not address the first representative's conclusion that the status of Hough Transit's president was beyond the scope of the proceeding.

### ISSUES

1. Was the second Commissioner's representative's decision arbitrary and capricious?

2. Did the second representative's decision violate applicable principles of res judicata and law of the case?

3. Was the second representative's decision supported by substantial evidence?

4. Are commissioned milk truck drivers specifically excluded from the unemployment compensation law?

5. Did the Commissioner's determination that James Hough was relator's employee deprive relator of due process under the law?

### ANALYSIS

1. *Standard of Review.*

The court of appeals has the power to "review all questions of law and fact presented by the record in accordance with chapter 14." Minn.Stat. § 268.12, subd. 13(4) (1984).

> In a judicial review under sections 14.-63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the sub-

stantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

> (a) In violation of constitutional provisions; or
>
> (b) In excess of the statutory authority or jurisdiction of the agency; or
>
> (c) Made upon unlawful procedure; or
>
> (d) Affected by other error of law; or
>
> (e) Unsupported by substantial evidence in view of the entire record as submitted; or
>
> (f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1984).

2. *Arbitrary and Capricious.*

Relator asserts that numerous procedural irregularities deprived it of due process. Relator claims the numerous hearings and decisions in this matter show a determination by the Department to reach its desired result without regard to relator's rights. Respondent responds that the second Commissioner's representative's decision is supported by the evidence.

We believe relator has been denied due process of law and that the second Commissioner's representative's decision must be set aside. Our main concern is the complete disregard of the first Commissioner's representative's decision in subsequent proceedings. The first representative's decision was very specific in enumerating the inadequacy of the first referee's decision. The first representative's decision included specific instructions for the referee on remand. The second referee, however, reached his decision totally disregarding these instructions.

Our review here, however, is of the second representative's decision. The second representative's decision affirmed the second referee and did not follow the decision of the first representative. The first representative determined a finding regarding the relationship between Hough Transit and its customers was essential to finding an employee-employer relationship. The second representative ignored this finding stating, "that point is not determinative of

the question in issue." The second representative also held the president of Hough Transit was an employee whose remuneration was subject to unemployment tax. This holding was made despite the first representative's ruling that this issue was not part of the initial determination and was beyond the scope of relator's appeal.

■■■ The second representative's decision deprived relator of a fundamentally fair administrative procedure. Despite a ruling by one Commissioner's representative purporting to narrow the remaining issues, relator was subjected to continued efforts to address issues resolved by the first Commissioner's representative. We believe the second representative's decision, and the entire course of conduct by the Department in this matter, represented the agency's will and not its judgment. The second representative's decision was arbitrary and capricious. *See Markwardt v. State, Water Resources Board*, 254 N.W.2d 371, 374 (Minn.1977).

3. *Effect of First Representative's Decision.*

■■■ We believe the second representative's actions also violated principles of res judicata and law of the case. The United States Supreme Court has held that principles of res judicata apply to actions by administrative agencies.

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.

*United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *see* Restatement (Second) of Judgments § 83

(1982). In an unemployment matter similar to this, one court held:

> While the Board of Review is not a court, it was created by the legislature and endowed with quasi-judicial functions. The doctrine of *res judicata* applies to administrative proceedings when the agency is acting in a judicial capacity and resolves disputed issues properly before it, which the parties have had an adequate opportunity to litigate. Therefore, it also seems appropriate to apply the law of the case doctrine to administrative proceedings, when they involve quasi-judicial functions.

*Rainbolt v. Everett*, 6 Ark.App. 204, 207, 639 S.W.2d 532, 534 (1982). The law of the case doctrine applies to successive administration proceedings, and it is not necessary that the administrative adjudication have been reviewed and affirmed by a court before the doctrine will apply. Restatement (Second) of Judgments § 83 comment a (1982).

The Minnesota Supreme Court has formulated the law of the case doctrine as follows:

> Based on a policy of ending litigation, an adjudication on a first appeal is final and is the law of the case on all subsequent appeals in which the same facts are involved.

*In re Hartz' Estate*, 238 Minn. 558, 559, 58 N.W.2d 57, 58 (1953); *see also Minnesota Power & Light Company v. Minnesota Public Utilities Commission*, 342 N.W.2d 324, 327 (Minn.1983).

■■■ Under this doctrine, the decision by the first Commissioner's representative was binding thereafter as the law of the case. By ignoring the law of the case, the second representative's decision was made upon unlawful procedure and affected by an error of law.[1]

---

1. Although the Commissioner has the power to reverse an earlier, erroneous adjudication, this power must be exercised within a reasonable time after the decision. *See Anchor Casualty Company v. Bongards Co-operative Creamery Association*, 253 Minn. 101, 106, 91 N.W.2d 122, 126 (1958); *Stearns-Hotzfield v. Farmers Insur-* *ance Exchange*, 360 N.W.2d 384, 389 (Minn.Ct. App.1985). Even if the second representative's decision is characterized this way, the second decision would be unlawful because not made within a reasonable time. The second representative's decision was made almost two years after the first representative's decision. More-

#### 4. *Substantial Evidence.*

We note also that there is not substantial evidence on the record to support the second representative's conclusion the drivers were employees. On remand, the only testimony taken was from the president of Hough Transit, James Hough. Hough testified the company's customers were not its agents and that each customer had its own quality control standards. Thus, the only testimony presented negated the sole issue remanded to the referee regarding the relationship of the drivers to Hough Transit. Although great deference is given to administrative factfinding, under these circumstances we conclude the second representative's decision that the drivers were employees was not supported by substantial evidence. *See White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983).

#### 5. *Statutory Exemption of Milk Haulers.*

Although we determine the drivers were not employees, we must still consider whether the drivers are included under other provisions of the unemployment services law. Minn.Stat. § 268.04, subd. 12 (1984) provides:

The term "employment" shall include: Any service performed * * * by;

    *      *      *      *      *      *

(b) any individual * * * who performs services for remuneration for any person as an agent-driver or commission-driver engaged in distributing meat products, vegetable products, fruit products, bakery products, beverages (*other than milk*), or laundry or dry-cleaning services * * *.

*Id.* (emphasis added). Respondent contends this exclusion does not apply here because the drivers collect milk and do not distribute milk. We believe this construction is strained. *See* Minn.Stat. § 645.17(2) (1984). The drivers in this matter are part of the chain of distribution. Subdivision 12(b) excludes non-employee milk truck drivers from the unemployment services law.

#### 6. *Due Process.*

The second representative's determination that Hough Transit's president's wages were subject to unemployment taxes was, in addition to being arbitrary and capricious and violating the law of the case, violative of due process. The requirement of procedural due process includes the requirements of notice and opportunity to be heard. *See Rock v. Hennepin Broadcasting Associates, Inc.*, 359 N.W.2d 735, 739 (Minn.Ct.App.1984). The initial November 19, 1981 determination in this matter did not apprise relator the Department was seeking unemployment taxes for wages paid to the company's president. It merely stated taxes must be paid for wages paid to "your milk hauler route drivers." This notice did not sufficiently inform relator that taxes on the president's wages had been determined.

In order to be constitutionally sufficient, the notice should have communicated the interest at stake. *See Schulte v. Transportation Unlimited, Inc.*, 354 N.W.2d 830, 834 (Minn.1984). The second representative's determination that Hough Transit's president's wages were subject to unemployment tax violated due process. *See id.* at 835.

### DECISION

The decision of the second Commissioner's representative (1) was arbitrary and capricious, (2) violated principles of res judicata and law of the case, (3) was not supported by substantial evidence, and (4) addressed issues without notice sufficient to satisfy constitutional due process requirements. The second Commissioner's representative's determination that milk truck drivers were employees and that Hough Transit's president's wages were

over, it would be improper for the Commissioner to reverse a decision after the parties suffered the time and expense of remand proceedings.

subject to unemployment taxes is reversed. The milk truck drivers are exempt from unemployment laws pursuant to Minn.Stat. § 268.04, subd. 12(b) (1984).

Reversed.