Charles D. NOLAN, et al., Respondents,

v.

James C. STUEBNER, et al.,
Appellants.

No. C4–88–214.

Court of Appeals of Minnesota.

Oct. 4, 1988.
Review Denied Dec. 16, 1988.

Alan W. Weinblatt, St. Paul, for respondents.

John Carroll, Robert L. Meller, Jr., John P. Boyle, Minneapolis, for appellants.

Heard, considered and decided by FOLEY, P.J., and NORTON and LESLIE,* JJ.

## OPINION

NORTON, Judge.

Respondents Charles Nolan and Nancy Nolan initiated a declaratory judgment action in 1984 against appellants James Stuebner and Diane Stuebner, asking the court to determine whether they have a pedestrian easement across the Stuebners' property and an easement to erect and maintain a dock off the Stuebners' Lake Minnetonka shoreline. The matter was tried before the trial court, which granted a declaratory judgment in favor of respondents on May 15, 1987. The trial court denied appellants' motion for amended findings or in the alternative a new trial, and judgment was entered. We affirm.

## FACTS

The Stuebners are the fee owners of Lake Minnetonka lakefront property (Parcel A). The Nolans are fee owners of property which abuts Parcel A, but which does not rest next to the lake (Parcel B).

The trial court found that prior to 1964 Parcel A and Parcel B were both owned in fee simple by Kenneth and Elizabeth Iverson. On October 28, 1963, the Iversons entered into a contract for deed with Betty Payton for the sale of the back portion of their property, which is included in Parcel B. The contract for deed provided that the Iversons would convey to Payton the fee of the property:

together with an easement for pedestrian ingress and egress to the shore of Lake

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Minnetonka over and across that portion of said tract A registered land survey number 16 lying northwesterly of the northwesterly line of the parcel herein described; together with an easement for the erection and maintenance of a dock for watercraft purposes on the shore of Lake Minnetonka bordering on said tract.

This contract for deed has never been recorded.

On January 2, 1964, the Iversons conveyed Parcel A to Morgan Aldrich, by deed document number 755355. The warranty deed said that Parcel A was:

subject to an easement for pedestrian ingress and egress to and from Lake Minnetonka and subject to an easement for the purposes of erection and maintenance of a dock for watercraft purposes on the shores of Lake Minnetonka in favor of Parcel 2.

This document states that Parcel 2 is included in the property currently owned by the Nolans and referred to as Parcel B. Parcel 1 of the document includes the land which is part of Parcel A and is now owned by the Stuebners. This deed does not recognize or refer to any outstanding unrecorded contract for deed which created the easement. According to the testimony of the realtor, the Iversons as grantors and the Aldriches as grantees had knowledge and agreed to the creation of both easements. After the warranty deed from Iversons to Aldriches had been recorded, the Iversons were issued a residuary certificate of title for the remaining property, including Parcel B. The residuary certificate stated that the property retained by the Iversons was held together with an easement for pedestrian ingress and egress and together with an easement for purposes of a dock.

In August 1964, the Aldriches conveyed by warranty deed a triangle parcel of land located on the southerly edge of their parcel to Mr. and Mrs. Franklin Shedd. Later in 1964, the Shedds conveyed all of their property, including the triangle parcel that once belonged to Parcel A, to Stewart and Marian Silloway. Because the Silloways'

property included the triangle portion of property which had formerly been owned by the Aldriches, the Silloways certificate of title incorporated the same "subject to" language that appeared in the Aldriches' warranty deed.

In 1966, the Silloways entered into an agreement for mutual release of easements with the Iversons and Betty Payton. The purpose of the agreement was to release the triangle parcel of property from the pedestrian and dockage easements. The Silloways initiated a proceeding subsequent to the initial registration to have the notation regarding the pedestrian and dockage easements removed from their certificate of title. Due to an error in the trial court's order in 1966, which released all of Parcel A from the easements, rather than just the triangle portion, an amended order was issued in 1968.

On October 25, 1968, the Iversons conveyed Parcel B by warranty deed to Betty Payton. The legal description in the deed included the easement language and further added "as shown in deed document number 755355." On the same date, the Nolans received the property by warranty deed from Betty Payton. Their deed also included the easement language and referred back to deed document number 755355. The certificate of title issued to the Nolans states that the Nolans' title to the property is held:

together with an easement for pedestrian ingress and egress to and from Lake Minnetonka and together with an easement for the purposes of erection and maintenance of a dock for watercraft purposes on the shores of Lake Minnetonka, as shown in deed document number 755355, Files of Registrar of Titles.

In July 1969, the Aldriches conveyed a small L-shaped parcel of their property to the Nolans, by deed document number 962220. As part of this transaction, the parties made the following reference to the restrictions and easements contained in deed document number 755355:

As partial consideration for the transfer of the aforesaid property, grantors [Aldriches] and grantees [Nolans] herein

agree that with reference to restrictions and easements contained in document number 755355, Registrar of Titles, Hennepin County, Minnesota, that the easement for pedestrian ingress and egress to and from Lake Minnetonka shall be limited to the southerly ten (10) feet of the property referred to in said document number 755355 as Parcel 1.

The property denoted as Parcel 1 in document number 755355 described the Aldriches' property prior to the 1964 conveyance of the triangle parcel to the Shedds. The Aldriches and the Nolans, therefore, located the pedestrian easement over property which was not owned by the Aldriches.

On September 20, 1973, the Aldriches conveyed the remainder of their property by warranty deed to Thomas and Barbara Gallagher. This deed stated that the conveyance was subject to "restrictions, reservations and easements of record." The Gallaghers certificate of title states that the property acquired by the Gallaghers from the Aldriches was:

> subject to an easement for pedestrian ingress and egress to and from Lake Minnetonka as shown in deed document 755355 and further set out in deed document 962220, Files of Registrar of Titles;
>
> subject to an easement for the purposes of erection and maintenance of a dock for watercraft purposes on the shores of Lake Minnetonka, as shown in deed document 755355, Files of Registrar of Titles.

On February 27, 1976, the Gallaghers conveyed Parcel A by warranty deed to the Stuebners. This deed does not mention any easement. The Stuebners' certificate of title restates the easement language which was in the Gallaghers' certificate of title.

Prior to purchasing their property, the Stuebners had the title examined by an attorney, who stated that the property was subject to the easements. When the Stuebners gave a mortgage against their property to First National Bank of Wayzata, in 1980, the mortgage warranted that the Stu-ebners' title was subject to the pedestrian and dock easements.

From July 1976 until July 1982, the Stuebners did not object to the Nolans using their property to go down to the lake. This action was commenced after the Stuebners took down a dock which had been erected by the Nolans in 1983.

## ISSUES

I. Did the language of the 1964 warranty deed stating that the property was "subject to an easement" create an easement?

II. Did the trial court err in reforming the certificates of title to show the modification of location of the easement?

## ANALYSIS

### I.

Appellants claim that the 1964 deed from the Iversons to the Aldriches, which states that Parcel A is subject to pedestrian and dock easements, does not validly create an easement. Appellants claim that "subject to" does not create an easement but presupposes an existing easement, and that no pre-existing easement of record existed.

Appellants rely on *Werner v. Sample*, 259 Minn. 273, 107 N.W.2d 43 (1961), in arguing that the 1964 deed did not create an easement. In *Werner*, Sample received a contract for deed in 1948 which set out a driveway easement across his neighbor's land. This contract for deed was not recorded. Sample received a warranty deed in 1958 which again described the easement. Sample's neighbor, Werner, received a warranty deed from the common owner in 1951. Werner's deed conveyed the premises "subject to easement for driveway and sewer * * * " *Id.* at 275, 107 N.W.2d at 44. The supreme court held that such language does not create an easement, but presupposes an existing easement. "The rule is that a grantee of land takes title subject to duly recorded easements which have been granted by the predecessors in title." *Id.*

However, we do not believe that the holding in *Werner* applies to this case. The

property in *Werner* was abstract property; the property involved in this case is Torrens property. In *Werner* the property owner whose land was subject to an easement would have no notice of a prior unrecorded document creating an easement. In this case, the 1964 certificate of title shows that the Parcel A property is subject to an easement, and the residual certificate of title states that the Parcel B property is together with an easement. Under the Torrens system, these certificates of title conclusively show that an easement exists. Minn.Stat. § 508.36 (1986).

■ *Werner* is further distinguishable from the present case. *Werner* involved parties to the original grant of an easement who disputed its existence, whereas in the present suit, all parties to the original easement agreed that the easement existed. Respondents correctly argue that another ground for upholding the validity of this easement, is that the Aldriches were aware of the easement in 1964 when they accepted the deed. As a matter of common law:

> A person who purchases land with knowledge or with actual, constructive or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement.

25 Am.Jur.2d *Easements,* § 97 (1966). Because the original grantees, the Aldriches, had actual knowledge that an easement existed by a prior unrecorded contract for deed, they took their property subject to the easement. It follows that all successors in title to the Aldriches would also take this property subject to the easement.

The trial court correctly determined that a valid easement was created by the 1964 warranty deed from the Iversons to the Aldriches.

## II.

Appellants contend that the relocation, or definition of placement of the existing easement, violates the Torrens statute and the purpose behind the Torrens Act. Appellants next claim that pursuant to Minn. Stat. § 508.25 (1986) they received their certificate of title in good faith and for valuable consideration, and therefore hold it free from all adverse claims which are not noted in the last certificate of title. Appellants finally claim that the trial court erred in reforming and altering their certificate of title by placing a new easement across their land, and extinguishing the easement which was partially off their land, as previously described in their certificate of title.

### A. *Violation of the Torrens Act.*

The purpose behind the Torrens statute is to give certainty to the holder of a certificate of title that the land is only encumbered with interests as noted in the last certificate of title. The easement appeared on the first certificate of title from the common land owner, Iversons, when they granted Parcel A to the Aldriches. Iversons' certificate of title for the remainder of the common property, which is now Parcel B, stated that Parcel B included an easement across Parcel A. The trial court correctly found that Stuebners' certificate of title and their predecessors' certificates of title conclusively show that the title to the Parcel A property is held subject to the easements. *See* Minn.Stat. § 508.36 (1986). The trial court also correctly found that the certificates of title of Nolans' property and their predecessors in title conclusively showed that the Parcel B property was owned together with such easements. *See id.*

■ However, we agree with Richard Edblom, Hennepin County Title Examiner, who testified that while a certificate of title is conclusive evidence that there is an easement contained in the certificate, it does not preclude judicial inquiry into the validity of the easement. A certificate of title may be altered by order of the court upon any reasonable ground. Minn.Stat. § 508.71, subd. 2(7) (1986). The trial court found that alteration of the certificates of title is needed so that the intent of the parties and the correct legal description of the easement is properly shown. Respondents should have more appropriately brought a proceeding subsequent to registration to determine the placement of the

easement, rather than this declaratory judgment action. However, the proceeding before the trial court was substantively the same as a proceeding subsequent where the meaning of a document is determined by the intent of the parties.

## B. *Purchasers in Good Faith.*

█ Appellants cannot claim that they had no notice of an easement across their land. Their certificate of title specifically cites two deed documents, one of which created an easement and the other which defined the placement of the easement. Even though the easement may be ambiguous as stated in their original certificate of title, the Stuebners were on notice that such registered documents pertaining to their title existed. *See* Minn.Stat. § 508.48 (1986). Additionally, the Stuebners were on record notice, and actual notice through their attorney's title opinion, that their certificate of title was clouded due to a 1969 deed by a predecessor in title, granting an easement on property partially not owned by the grantors.

The trial court correctly found that the Stuebners were not bona fide purchasers for value because of the actual and constructive notice of the claimed existence of the easements. Therefore, we believe the Stuebners' certificate of title could be altered since they were aware that some type of easement existed across their property. Minn.Stat. § 508.25 (1986).

## C. *Creation of a New Easement.*

█ We agree with respondents that a new easement has not been created by the trial court; rather the easement is now properly defined as the parties intended in the 1969 deed from the Aldriches to the Nolans. Appellants had actual and record notice that an easement existed on the Stuebners' property, even if it was inaccurately described in the certificate of title. In altering the certificates of title, the trial court by implication reformed the 1969 deed between the Aldriches and the Nolans. The 1969 deed placed the easement on the southerly ten feet of the property as it existed in 1964, instead of on the 1969

parcel owned by the Aldriches, as was intended by the parties to the 1969 deed.

█ The next question we must answer is whether reformation of the 1969 deed was proper. A trial court's determination regarding reformation will not be disturbed on appeal unless it is manifestly contrary to the evidence. *Metro Office Parks Co. v. Control Data Corp.*, 295 Minn. 348, 353, 205 N.W.2d 121, 124 (1973). The evidence supporting reformation of a written instrument, including a deed, must be consistent, clear, unequivocal, and convincing. *Kleis v. Johnson*, 354 N.W.2d 609, 611 (Minn.Ct.App.1984) (citing *Theros v. Phillips*, 256 N.W.2d 852, 857 (Minn. 1977)).

█ A written instrument may be reformed if the following elements are proved:

1. there was a valid agreement between the parties expressing their real intentions;

2. the written instrument failed to express the real intentions of the parties; and

3. this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Nichols v. Shelard National Bank*, 294 N.W.2d 730, 731, 734 (Minn.1980).

█ The trial court found that it was not the intention of the Aldriches by defining and locating the pedestrian easement to 1) eliminate or in any manner destroy, interrupt, interfere with the Nolans' full use and enjoyment of the easement; or 2) locate it on property they did not own. The trial court's finding that it was the Aldriches' intention to limit the pedestrian easement to the southerly ten feet of the property actually owned by them at the time of the execution of this deed, is supported by Mrs. Aldrich's testimony regarding the placement of the easement.

The trial court found that the three necessary requirements in reforming a document were met, and reformed the legal description of the pedestrian ingress and

egress easement so that it ran along the southerly ten feet of the Aldrich property as it existed in 1969 and as the Stuebners' property exists today. We believe that from the testimony given at trial, there was clear evidence that the parties intended to place the easement on the southerly ten feet of Parcel A, which is now owned by the Stuebners. There was no evidence that the Nolans intended to eliminate, destroy, interrupt or abandon the easement. Even though the Nolans did not regularly use the pedestrian easement or the dock easement, such nonuse without intent of abandonment does not constitute abandonment. *See Simms v. Simms Hardware*, 216 Minn. 283, 291, 12 N.W.2d 783, 787 (1943).

The trial court correctly reformed both parties' certificates of title to show the placement of the easement as was intended by the Aldriches and the Nolans. In our view, such reformation is not contrary to the provisions, or the purpose, of the Torrens Act, since the Stuebners' certificate of title contained the easement and because they had knowledge that an easement, though ambiguously described, existed.

### DECISION

The trial court did not err in holding that an easement was created by the language in the original certificates of title to the subject properties. The trial court correctly revised the certificate of title to reflect the placement of the easement as was originally intended by the parties who defined the easement.

Affirmed.