In the Matter of the Petition of **METRO SIDING, INC.**, a Minnesota corporation; **Northland Cabinets, Inc.**, a Minnesota Corporation; and **JLJ Partnership**, a Minnesota partnership.

In Relation to Certificate of Title No. 101113 issued for land in the County of Dakota and State of Minnesota legally described as follows: **Lot One (1), Alimagnet Landing**, according to the Recorded plat thereof.

No. C2–00–1123.

Court of Appeals of Minnesota.

April 3, 2001.

Peter W. Johnson, Wayzata, for respondent.

Dale C. Nathan, Nathan & Associates, Eagan, for appellant.

Considered and decided by RANDALL, Presiding Judge, PETERSON, Judge, and HUSPENI, Judge.*

## OPINION

PETERSON, Judge.

Respondents Metro Siding, Inc.; Northland Cabinets, Inc.; and JLJ Partnership commenced a proceeding subsequent to initial registration of land, seeking an order declaring appellant Murr Plumbing, Inc.'s, mechanic's lien statement invalid and directing issuance of a new certificate of title in respondents' names only. Murr Plumbing filed an answer and counterpetition seeking an order declaring respondents' mechanic's lien statements invalid and directing issuance of a new certificate of title in Murr Plumbing's name only. Following a trial on stipulated facts, the trial court determined that Murr Plumbing's lien was valid. Following a second trial to determine the remaining issues, the trial court declared all the parties' liens valid and directed issuance of a new certificate of title in the names of appellant and respondents that reflects the percentage interest of the property that each party owns. Murr Plumbing moved for a new trial and amended findings of fact, and the motions were denied. Murr Plumbing appealed from the order issued following the second trial and from the order denying its posttrial motions. Because Murr Plumbing did not have notice that the parties' ownership interests would be determined in the proceeding subsequent, we reverse.

## FACTS

In April 1997, Murr Plumbing filed a mechanic's lien against property in Dakota County. The original lien statement included an incorrect legal description of the property but a correct street address. In November 1997, Murr Plumbing discovered the error and filed an amended lien

statement. Each of the respondents either filed a mechanic's lien against the property or was assigned a mechanic's lien that had been filed by someone else.

The property was sold in a mortgage-foreclosure sale. The mortgagor failed to redeem the property within the statutory period and appellant and the respondents each claimed a right to redeem based on their status as mechanic's lien holders. During the statutory redemption period, each party separately paid the required redemption amount to the Dakota County Sheriff. After making the required payments to the mortgagee, the sheriff held the remaining portion of the redemption payments until the parties provided written instructions indicating the ownership interests of each party that were to be reflected in the certificate of redemption.

The parties began negotiations regarding their ownership interests, but they were not able to reach an agreement about what percentage of the property each party owned. To obtain refunds of the excess payments they had made to the sheriff, the parties entered an agreement that stated the amount that the sheriff was to pay each party and directed the sheriff to issue a certificate of redemption that indicated the parties had undivided interests in the property. The agreement listed the percentage of the property that each party claimed to own and the percentage of the total refund amount that the sheriff was to pay to each party. But the agreement also stated:

2. Any of the parties may commence a suit for declaratory judgment and partition. Each of the parties shall have the right to assert any claim it has against any other party. Nothing in this Agreement shall limit or foreclose the rights of any party hereto to assert a claim against any other party and/or to challenge the rights of any party to redeem.

Minn. Const. art. VI, § 10.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

3. The parties agree that the respective shares set forth in the instruction letter to the Sheriff of Dakota County, and the respective shares reflected in the Certificate of Redemption, issued by the Sheriff of Dakota County, shall not be binding or prejudicial to the rights preserved hereunder. Further, it is agreed that no court shall give any weight or consideration to the respective shares set forth in said documents in making its determination of rights held by the parties hereto.

Respondents commenced a proceeding subsequent to initial registration of land, seeking an order declaring Murr Plumbing's mechanic's lien statement invalid and unenforceable and directing issuance of a new certificate of title in respondents' names only. Murr Plumbing filed an answer and counterpetition seeking an order declaring respondents' mechanic's lien statements invalid and directing issuance of a new certificate of title in Murr Plumbing's name only. Neither respondents' petition nor appellants' answer and counterpetition sought a determination of the percentage of the property that each party owned.

In December 1998, after motions for summary judgment had been denied, Murr Plumbing moved to continue the trial date to permit additional discovery. The trial court denied the motion and limited the issue for trial to the validity or invalidity of Murr's lien. The court also ordered that "no further discovery shall be required or permitted." On January 19, 1999, a trial was held on the sole issue of the validity of Murr Plumbing's mechanic's lien, and the court determined that the lien was valid.

A trial to determine the validity of respondents' liens was scheduled for Monday, March 20, 1999. On March 17, 2000, the Friday before the trial was to begin, Metro Siding submitted a pretrial brief that raised the issue of the parties' percentage interests in the property. At trial, Murr Plumbing objected to the court considering this issue. The court overruled Murr Plumbing's objections, stating:

> [I]t is my understanding that the issue of percentages have been negotiated by the parties and discussed by the parties, including [Murr Plumbing], for months. We are now in the position of having five attorneys sitting in this courtroom, witnesses sitting in this courtroom, a piece of property that has been bound up in litigation, and I am loath to subject any of the parties to needless future litigation and incurring needless future attorney's fees.
>
> I want the issues resolved. * * * It has to come to an end for everyone's sake. So, I will allow you to submit—if you need some additional time, but I want, to whatever degree we can, to walk out of this courtroom today with all issues submitted for determination so that this case can come to an end and that the lives of individual and corporate parties can move on.

The court allowed the ownership percentages issue to be tried, and issued an order establishing the percentage interest in the property owned by each party. Murr Plumbing moved for amended findings of fact and a new trial. The motion was denied.

## ISSUES

1. Did the trial court have authority to determine the parties' ownership interests in the property in a proceeding subsequent to initial registration?

2. Did the trial court deny Murr Plumbing's due process rights by trying the issue of the parties' percentage ownership interests in the property?

3. Is the issue of whether the trial court erred by concluding that Murr Plumbing's lien was valid properly before this court?

## ANALYSIS

1. *Proceedings Subsequent to Initial Registration*

■ Murr Plumbing argues that the trial court had no statutory authority to

determine the percentage ownership interests of the parties in a proceeding subsequent to initial registration. Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998); *see also* Minn.Stat. ch. 645 (2000) (interpretation of statutes).

■ Minn.Stat. ch. 508 (1996 & Supp. 1997), also known as the "Torrens Act," provides for registration of Minnesota real estate. Once a proceeding has been held to register land, the certificate of title is conclusive proof of ownership and cannot be altered except as authorized by the Act. *In re Petition of Geis*, 576 N.W.2d 747, 749–50 (Minn.App.1998), *review denied* (Minn. May 28, 1998); Minn.Stat. § 508.36 (1998).

Citing *Fidelity & Deposit Co. v. Riopelle* (*In Re Petition of Fidelity & Deposit Co.* ), 298 Minn. 417, 216 N.W.2d 674 (1974), Murr Plumbing contends that proceedings subsequent to initial registration may not be used to determine a co-owner's ownership interest in a property. In *Fidelity,* a creditor-purchaser under an execution sale filed a petition subsequent to initial registration requesting the court to cancel an existing certificate of title and issue a new certificate of title. *Id.* at 419, 216 N.W.2d at 676. The trial court refused to cancel the certificate of title and issue a new certificate because the notice of levy was dated before the writ of execution and the notice of sale was not properly posted. *Id.* at 420, 216 N.W.2d at 676. The creditor-purchaser appealed arguing that the execution sale, which was the basis for issuing a new certificate of title, could not be collaterally attacked in a proceeding subsequent. *Id.* The respondent argued that any questions about the title of the petitioner could be raised in the proceeding subsequent, including an attack upon the validity of the execution sale. *Id.,* 216 N.W.2d at 676–77.

The supreme court held

that a certificate of sale on execution which is valid on its face cannot be attacked in a proceeding subsequent to initial registration and that defects not disclosed on the face of the certificate must be challenged in a direct action to set aside the sale.

*Id.* at 422, 216 N.W.2d at 678.

Appellant argues that under *Fidelity,* the trial court's scope of inquiry was limited to claims that could be resolved by referring to the face of the documents recorded on the certificate of title. Therefore, because the parties' ownership interests were not disclosed on the face of the documents, the trial court erred by determining the ownership interests in a proceeding subsequent.

Appellant's argument fails to recognize that in 1983, nine years after the supreme court decided *Fidelity,* the legislature amended the Torrens Act to broaden the scope of proceedings subsequent. In 1983, the legislature added the following emphasized language to Minn.Stat. § 508.71, subd. 2 (1982):

A registered owner or other person in interest may, at any time, apply by petition to the court, upon the ground that (1) registered interests of any description, whether vested, contingent, expectant, or inchoate, have terminated and ceased; (2) new interests have arisen or been created which do not appear upon the certificate; (3) any error or omission was made in entering a certificate or any memorial thereon, or on any duplicate certificate; (4) the name of any person on the certificate has been changed; (5) the registered owner has married, or, if registered as married, that the marriage has been terminated; (6) a corporation which owned registered land and has been dissolved has not conveyed it within three years after its dissolution; or (7), upon any reasonable ground, *that any other alteration or adjudication should be made. * * * * After notice has been given as ordered, the court* may order the entry of a new certificate,

the entry, *amendment,* or cancellation of a memorial upon a certificate, or grant any other relief upon the terms, requiring security if necessary, as it may consider proper.

1983 Minn. Laws ch. 92, § 21. The language added in 1983 expanded the scope of issues that may be litigated in a proceeding subsequent.

In an article that traces the evolution of proceedings subsequent, Richard W. Edblom, a recognized authority on registered property in Minnesota and the former Hennepin County Examiner of Titles, explained the expansion of the scope of proceedings subsequent. Edblom explained that, until the 1983 amendment, "it could be argued that court orders affecting registered land could only be entered when specifically authorized in Chapter 508." Richard W. Edblom, *Torrens 1995–Examiner's Certifications, Directives and Proceedings Subsequent,* 13 Real Est. Inst. (Minn. St. B. Ass'n 1995). He then stated:

Nevertheless, the trend for many years has been to use subsequent proceedings to solve an increasingly wide range of problems‖ In 1983 the wording of Minn.Stat. 508.71, Subd. 2, was revised to provide a statutory basis for broad uses of § 508.71.

*Id.*

▮ Also, in *Nolan v. Stuebner,* 429 N.W.2d 918, 922–23 (Minn.App.1988), *review denied* (Minn. Dec. 16, 1988), this court approved of the use of a proceeding subsequent to amend a certificate of title. In *Nolan,* the respondents obtained a declaratory judgment to have an easement declared valid. *Id.* at 919. This court agreed that while a certificate of title is conclusive evidence that there is an easement contained in the certificate, it did not preclude judicial inquiry into the validity of the easement. *Id.* at 922 (citing Minn. Stat. § 508.71, subd. 2(7) (1986)). This court then stated:

Respondents should have more appropriately brought a proceeding subsequent to registration to determine the

placement of the easement, rather than this declaratory judgment action. However, the proceeding before the trial court was substantively the same as a proceeding subsequent where the meaning of a document is determined by the intent of the parties.

*Id.* at 922–23. This statement indicates that the trial court's scope of inquiry in a proceeding subsequent under Minn.Stat. § 508.71, subd. 2(7) (1996), is not limited to claims that can be resolved solely by referring to documents recorded on the certificate of title. We conclude that, with proper notice, the issue of the parties' ownership interests in the property could be determined in a proceeding subsequent.

2. *Due process*

▮ A reviewing court is not bound by and need not defer to a trial court's decision on a purely legal issue. *Frost Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). "A party is bound by its pleadings unless other issues are litigated by consent." *Great Am. Ins. Co. v. Golla,* 493 N.W.2d 602, 605 (Minn.App.1992). Where the parties have limited themselves to a specific cause of action, they cannot then admit evidence that addresses another cause of action. *Seim v. Garavalia,* 306 N.W.2d 806, 813 (Minn.1981); *see also* Minn. R.Civ.P. 8.01 (pleadings shall contain a statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought). Murr Plumbing argues that it had no notice that the parties' ownership interests in the property would be an issue in the proceedings subsequent and, therefore, it was denied due process when the trial court determined the ownership interests. We agree.

In *Hough Transit, Ltd. v. Harig,* 373 N.W.2d 327, 333 (Minn.App.1985), this court concluded that a determination by the Commissioner of Economic Security that Hough Transit's president's wages were subject to unemployment taxes vio-

lated due process when the Department of Economic Security had notified the relator before the hearing that the sole issue it was considering was whether the relator's drivers were employees subject to unemployment. This court stated:

> The initial November 19, 1981 determination * * * did not apprise relator the Department was seeking unemployment taxes for wages paid to the company's president. It merely stated taxes must be paid for wages paid to "your milk hauler route drivers." This notice did not sufficiently inform relator that taxes on the president's wages had been determined.
>
> In order to be constitutionally sufficient, the notice should have communicated the interest at stake.

*Id.* (citation omitted).

Murr Plumbing was not apprised until the last business day before trial that the parties' ownership interests would be an issue in the proceedings subsequent. In their petition, respondents requested the following relief:

1. An order declaring Murr Plumbing's Mechanic's Lien Statement invalid and unenforceable against the Subject Property at the time of its attempted redemption;

2. An order declaring Murr Plumbing did not have a redeemable interest in the Subject Property at the time of its attempted redemption;

3. An order directing [respondents] to return to Murr Plumbing the amount Murr Plumbing tendered to the sheriff in its attempt to redeem;

4. An order directing issuance of a Certificate of Title in the names of [respondents] only;

5. For such other and further relief as the Court deems just and equitable.

■ The parties had been involved in settlement negotiations regarding the percentage of the property each party owned, but these negotiations did not put Murr Plumbing on notice that this issue would be decided in the proceeding subsequent. In fact, had the respondents obtained an order declaring Murr Plumbing's mechanic's lien invalid and unenforceable, as they requested, there would have been no need to determine the percentage of the property Murr Plumbing owned. Murr Plumbing could have reasonably considered the proceeding subsequent to be an alternative to resolving the ownership interest issue rather than a forum for resolving the issue.

Furthermore, in their agreement that listed the percentage of the property that each party claimed to own, the parties expressly agreed that any of them could commence a suit for declaratory judgment and partition. Murr Plumbing could have reasonably believed that a suit for declaratory judgment and partition, rather than the proceeding subsequent, would be used to determine the parties' ownership interests.

The requirements of procedural due process include notice and an opportunity to be heard. *Hough Transit,* 373 N.W.2d at 333. Murr Plumbing did not have sufficient notice that the ownership interests would be determined in the proceeding subsequent to prepare for trial of the issue. Therefore, Murr Plumbing's due process rights were violated.

3. *Validity of Murr Plumbing's mechanic's lien*

Respondents argue that the trial court erred when it determined that Murr Plumbing's lien was valid. However, an issue decided adversely to respondents is not properly before this court if no notice of review is filed. *City of Ramsey v. Holmberg,* 548 N.W.2d 302, 305 (Minn. App.1996), *review denied* (Minn. Aug. 6, 1996). Failure to file a notice of review limits the issues on appeal to those in the notice of appeal. *See Northern State Bank v. Efteland,* 409 N.W.2d 541, 544 (Minn.App.1987) (failure to file notice of review bars consideration of issue). Be-

cause the respondents did not file a notice of review raising the issue of the validity of Murr Plumbing's lien, this issue is not properly before us and we will not consider it.

## DECISION

The trial court could properly determine the parties' ownership interests in the subject property in a proceeding subsequent brought under Minn.Stat. § 508.71, subd. 2(7) (1996), but Murr Plumbing did not have sufficient notice that a determination of the ownership interests would be an issue in the proceeding subsequent brought by respondents. Therefore, Murr Plumbing's right to due process was denied when the parties' ownership interest were determined in the proceeding subsequent.

**Reversed.**