*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1691**

Estate of Lawrence A. Werner
by Vivian Eileen Werner, Personal Representative,
Appellant,

vs.

Kreg A. Werner,
defendant and third party plaintiff,
Respondent,

vs.

Vivian Eileen Werner,
third party defendant,
Appellant.

**Filed July 6, 2015
Affirmed
Ross, Judge**

Scott County District Court
File No. 70-CV-08-23679

William G. Peterson, Peterson Law Office, LLC, Bloomington, Minnesota (for appellants)

Gavin P. Craig, Gavin P. Craig, P.A., Minnetonka, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

Decedent Lawrence Werner's son, Kreg Werner, and Kreg's stepmother, Vivian Werner (who is also personal representative of Lawrence's estate), fight over the title to an eight-unit apartment building in Shakopee. Lawrence and Kreg had entered into a contract for deed under which Kreg would buy the property from Lawrence by making monthly payments for a period of years. Lawrence later helped Kreg get a bank loan on the property by assigning to the bank his and Vivian's interest in the contract for deed, and he executed a quitclaim deed in the bank's favor. The bank registered the quitclaim deed. After Lawrence died, the bank assigned its deed to Kreg, who had satisfied the loan. Kreg then registered the deed, apparently acquiring legal title. Vivian sued Kreg for ownership on behalf of the estate, asserting quiet-title and fraud claims, among others. The district court conducted a bench trial and found against the estate. Because the estate did not meet its burden of proof on these claims, the district court did not clearly err and we affirm.

## FACTS

Several anomalies complicated the conveyance of an eight-unit apartment building in Shakopee. That property is the subject of this intrafamilial ownership dispute.

Lawrence Werner executed a contract for deed in 1997 to sell the property to his son, Kreg Werner. The contract required Kreg to make monthly $1,350 payments for 30 years. The building needed expensive improvements that Kreg could not afford, so in 2001 Lawrence helped Kreg obtain a loan from Paragon Bank for renovation. Lawrence

and Vivian Werner, Lawrence's wife and Kreg's stepmother, facilitated Kreg's loan by assigning the bank their interest in the contract for deed. They also executed a quitclaim deed in favor of the bank and gave the document to the bank. Paragon Bank issued the loan, which Kreg repaid on schedule.

According to Kreg, during the lengthy renovation, Kreg and Lawrence each discussed relinquishing the property to the other. The district court summarized Lawrence as saying that "he wanted nothing more to do with the property and indicated his intention to simply deed it over" to Kreg. Lawrence then required only that Kreg continue paying him $1,350 monthly until Lawrence's death. They never reduced this modification to writing. Kreg continued paying his father monthly until Lawrence died in April 2008. When Kreg stopped making payments, Vivian, who was representative of Lawrence's estate, demanded that Kreg continue paying according to the written contract for deed, and she threatened to foreclose.

Kreg investigated and discovered that in 2003 Paragon Bank had registered Lawrence and Vivian's 2001 quitclaim deed and their assignment of the contract for deed. No one at the bank could explain why it had done so, and bank officials agreed with Kreg that the bank should not have title. The bank's vice president advised Kreg to consult with the attorneys involved in the 2001 loan agreement. Kreg did so, and one of those attorneys prepared, and Paragon Bank signed, a quitclaim deed conveying the property to Kreg on July 7, 2008. Kreg immediately registered the quitclaim deed.

Vivian sued Kreg on the estate's behalf, alleging that Kreg had fraudulently misrepresented his interest to induce Paragon Bank to convey its interest in the property

to him, rather than convey it back to the estate. The estate brought claims for quiet title, fraud, conversion, constructive trust, and unjust enrichment, and it registered a notice of *lis pendens*. Kreg filed a counterclaim alleging slander of title.

The district court granted summary judgment favoring Kreg and conducted a trial on Kreg's counterclaims. The district court found in favor of Kreg on his slander-of-title claim. The estate appealed, and we reversed and remanded. *See Estate of Werner ex rel. Werner v. Werner*, No. A11-2198, 2012 WL 3553223, at *1 (Minn. App. Aug. 20, 2012).

On remand the district court held trial on all remaining claims. It again decided the case in Kreg's favor. It found that Lawrence and Vivian provided Paragon Bank the security agreement and a quitclaim deed that would convey the property according to the terms of the security agreement. The court found that Kreg's loan agreement identified a security agreement as one of the loan documents. But the district court did not receive that security agreement into evidence; it found that Lawrence and Vivian's security agreement was absent from the bank's file and was never registered, signed by the bank, or attached to the loan agreement. It deemed unreliable an unexecuted document that purported to be the security agreement because no one could establish that it was anything more than a preliminary draft. The district court refused to find that the bank held the 2001 quitclaim deed only as security for Kreg's loan.

The district court rejected the estate's fraud claim. It reasoned that the estate failed to prove either that Kreg induced the bank to convey title to him or that Kreg misrepresented the truth by telling the bank that the property should be his. The court credited Kreg's testimony about his and Lawrence's modification of the contract for

4

deed, and it held that the oral modification was not invalidated by the statute of frauds. It also concluded that Lawrence effectively conveyed the property to Kreg and that Kreg reasonably believed he owned the property when he asked the bank to convey its interest to him in 2008. And the district court found that Kreg, who had not seen any security agreement that Lawrence and Vivian purportedly executed, did not know that the agreement existed and therefore had no reason to suppose that the bank was obligated to return the property to the estate once the loan was satisfied.

The estate appeals.

## D E C I S I O N

The estate attacks the district court's decision on several grounds. It argues that the statute of frauds prevented Kreg and Lawrence from effectively modifying the contract for deed without a writing. It contends that the district court erred by treating the quitclaim deed that Lawrence and Vivian had given Paragon Bank in 2001 as a conveyance rather than merely as security for Kreg's loan. And the estate contends that Kreg engaged in fraud because he must have understood that neither he nor the bank was the true owner when he sought and obtained a quitclaim deed from the bank.

## I

The estate argues that the statute of frauds nullifies Kreg and Lawrence's oral modification of the 1997 contract for deed (the oral agreement that Kreg would obtain title to the property by making payments only until Lawrence's death). This argument, if convincing, would support the estate's quiet-title claim. Whether the statute of frauds applies to a contractual modification is a legal question that we review de novo. *Simplex*

5

*Supplies, Inc. v. Abhe & Svoboda, Inc.*, 586 N.W.2d 797, 800 (Minn. App. 1998), *review denied* (Minn. Feb. 24, 1999).

We must decide whether the statute of frauds defeats the oral modification. An owner generally cannot convey a fee interest in real property without a signed writing. Minn. Stat. § 513.04 (2014). A written contract subject to the statute of frauds generally cannot be altered orally. *Scheerschmidt v. Smith*, 74 Minn. 224, 228, 77 N.W. 34, 34–35 (1898). But the rule has various exceptions, and two exceptions are relevant here. First, an oral agreement can modify a real estate contract if it changes only the method or time of performance. *Thoe v. Rasmussen*, 322 N.W.2d 775, 777 (Minn. 1982). And second, a contract is not invalidated under the statute of frauds if it has been partly performed by the party seeking its enforcement. *Worwa v. Solz Enters., Inc.*, 307 Minn. 490, 492, 238 N.W.2d 628, 631 (1976). We must consider both exceptions here.

The district court applied the first exception, holding that the modification is not barred by the statute of frauds because it affected only the method or time of performance. The holding seems sound, but only on the surface. It is true that, literally speaking, agreeing to end the buyer's payment obligation sooner than required by the original contract for deed (depending on the timing of Lawrence's eventual death) affects the "time" of performance. But in a contract involving the exchange of property for fixed scheduled payments for a defined period, a decision to shorten that period affects more than the *time* of payment; it affects the total *amount* of the payment. The first exception does not fit.

6

But this gives us no cause to reverse; Kreg also performed his payment obligations relying on the modification, meeting the second exception. The statute of frauds is avoided when a party "shows that his acts of part performance in reliance upon the contract have so altered his position that he will incur unjust and irreparable injury in the event that defendant is permitted to rely on the statute of frauds" and "where the relationship of the parties, as shown by their acts rather than by the alleged contract, cannot reasonably be explained except by reference to some contract between them." *Burke v. Fine*, 236 Minn. 52, 55, 51 N.W.2d 818, 820 (1952). On the facts that are either undisputed or found by the district court, the modification occurred during the period when Kreg openly contemplated walking away from the contract, returning the property by default to Lawrence so Kreg would avoid the financial obligation of renovating and maintaining the building. According to Kreg in testimony credited by the district court, Lawrence avoided having the unwanted property returned to him after he offered to change the contract terms so that Kreg's payment obligation would last only through Lawrence's life rather than for 30 years. In this unusual circumstance in which the buyer's preexisting duty would have terminated if he and the seller had *not* modified this agreement, the contract-for-deed buyer's agreement to retain the property and not abandon it to the seller is sufficient reliance to trigger the equitable exception that the district court applied on other grounds. The oral agreement is therefore not invalidated under the statute of frauds.

That Kreg had fully performed his contractual duty also weighs against the estate's quiet-title claim in another way. As a nonpossessing party, the estate brought its quiet-

7

title claim in equity, rather than law. *See* Minn. Stat. § 559.01 (2014) (requiring possession or vacancy to bring a statutory quiet-title action); *Union Cent. Life Ins. Co. v. Page*, 190 Minn. 360, 367, 251 N.W. 911, 914 (1933) (allowing equitable action to uncloud title when the claimant does not possess the property). The supreme court has focused its equitable inquiry on whether the allegedly offending party has taken a knowing, "unconscionable advantage" of the other party's mistake. *Schoenfeld v. Buker*, 262 Minn. 122, 131, 114 N.W.2d 560, 566–67 (1962). The estate points to no knowing, unconscionable advantage taken by Kreg. It attempts unsuccessfully to compare Kreg to one who picked up a bag of cash that the bank left on the ground. This analogy does not fit the facts as found by the district court, which concluded that Kreg entered into and met his obligations under the modification. And because the oral modification was effective and Kreg fully performed, Kreg was also the equitable owner of the property. *See Summers v. Midland Co.*, 167 Minn. 453, 455, 209 N.W. 323, 323–24 (1926) (holding that the seller under a contract for deed holds "legal title merely as security for the payment of the purchase price" but that the buyer is "the equitable and substantial owner subject only to the payment of the balance of the purchase price").

Equally dispositive, because Kreg's right to the property rests on his having performed all of his obligations under the contract, the estate would have been *contractually* obligated to convey its interest in the property to Kreg even if the bank had not issued him the quitclaim deed. *See Hartung v. Billmeier*, 243 Minn. 148, 153, 66 N.W.2d 784, 789 (1954) (requiring party to perform contractual obligations when other contracting party has fully performed).

8

For all these reasons, regardless of the irregularity by which Kreg received title, the estate's arguments about the statute of frauds and Kreg's supposedly inequitable conduct do not lead us to reverse the district court's quiet-title decision.

**II**

The estate argues that the district court erred by refusing to find that Lawrence and Vivian gave the 2001 quitclaim deed to Paragon Bank only as security, rather than as a transfer of ownership. The estate argues that if the bank received only a security interest in the property, then it had nothing more than a security interest to convey to Kreg in 2008.

The argument, which has substantial merit, does not lead us to reverse. We review the district court's fact findings, including its findings of contractual terms, for clear error. *Morrisette v. Harrision Int'l Corp.*, 486 N.W.2d 424, 427 (Minn. 1992). The evidence indeed overwhelmingly points to the conclusion that Lawrence and Vivian transferred the 2001 quitclaim deed to Paragon Bank intending only that it would be part of a security agreement. But any error in failing to make this finding is harmless.

The bank registered the deed, and this conveyed fee-title ownership to the bank. Registration of a deed for Torrens property is a significant event because "[e]very person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration shall hold it free from all encumbrances and adverse claims." Minn. Stat. § 508.25 (2014). The certificate of title to land whose deed is registered proves ownership. *In re Metro Siding, Inc.*, 624 N.W.2d 303, 307 (Minn. App. 2001).

9

Paragon Bank's 2003 registration of the 2001 deed gave the bank legal title, regardless of whether it should have registered the deed. Because the bank had legal title, its 2008 deed effectively transferred title to Kreg. This does not mean that the registration made the bank's interest invulnerable: the bank's title was subject to an adverse claim if the bank did not receive it in good faith and for valuable consideration. Minn. Stat. § 508.25; *see also* Minn. Stat. § 508.71, subd. 2 (2014) (allowing any person in interest, at any time, to petition the court "upon any reasonable ground, that any other alteration or adjudication should be made" in registration). In a proper challenge, the district court could apply the "principles of equity when a result under the Torrens Act violates notions of justice and good faith." *In re Collier*, 726 N.W.2d 799, 808 (Minn. 2007). Those principles are not before us. The estate never attempted to invalidate Paragon Bank's registration in the district court, and it does not appear that the estate even sought to make the bank a party to this action. We consider the district court's decision based only on the procedural framing and the legal theories presented to the district court and to us on review. Because the bank's title through registration has not been challenged, we have no ground on which to deem infirm or invalid the bank's apparent ownership or its transfer of title to Kreg.

**III**

The estate contends that the district court erred by finding that Kreg reasonably believed that he was entitled to ownership of the property when he asked Paragon Bank to convey it. The estate maintains that a proper finding would support its fraud claim. The district court reasoned that proof of fraud would also support the estate's equitable quiet-

10

title claim. A claim of fraud requires proof of a party's false representation of a material fact, made with the party's knowledge of the falsity or with awareness of its own ignorance, with intent to induce reliance, and actually causing reliance resulting in pecuniary damage. *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007). The district court's finding that Kreg reasonably believed that he was the property owner when he asked the bank to convey ownership undercuts the estate's fraud position. We cannot reverse based on the estate's argument that Kreg could not reasonably believe that he owned the property because we are in no position on appeal to second-guess the district court's credibility determinations. *Sigurdson v. Isanti Cnty.*, 386 N.W.2d 715, 721 (Minn. 1986). The district court believed Kreg's representations, and so, deferring to its credibility assessment, we can see no clear error in the consequent finding that Kreg did not fraudulently represent his ownership to the bank.

The estate contends alternatively that the district court's finding was erroneous because Kreg should have known the terms of his 2001 loan agreement, which necessarily informed Kreg that the bank had no right to convey the property to him. Kreg's 2001 loan agreement states that Lawrence and Vivian gave the 2001 deed to Paragon Bank as security. The estate urges that we impute knowledge of the written agreement to the contracting parties. But proving fraud is by design difficult, because fraud is an intentional tort that involves a tortfeasor deliberately misrepresenting a known fact. *Hoyt*, 736 N.W.2d at 318. We are aware of no case that softens the knowledge requirement for fraud when a contract is involved so that the defendant's merely constructive or imputed knowledge can support the claim. The estate directs us to no

11

supporting authority. The estate has not shown that the district court clearly erred by finding that Kreg lacked the knowledge required for fraud.

We have focused on the estate's claims for quiet title and fraud because the estate's arguments on appeal, liberally construed, relate to those claims. The estate has not provided any specific arguments directing us to review the district court's decisions on its claims for conversion, constructive trust, and unjust enrichment. Because no prejudicial error is "obvious on mere inspection," *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (quotation omitted), we decline to consider whether the district court erred by finding insufficient proof of these claims.

**Affirmed.**